595 A.2d 623

**Barry W. KILMORE, Appellant,**

**v.**

**ERIE INSURANCE COMPANY and Blue Shield of Pennsylvania.**

**Deborah L. PETERSEN, Appellant,**

**v.**

**USAA PROPERTY & CASUALTY INSURANCE CO. and Medical Service Assoc. of Pennsylvania, Inc., t/d/b/a Blue Shield.**

Superior Court of Pennsylvania.

Argued June 12, 1991.

Filed Aug. 19, 1991.

David W. Knauer, Mechanicsburg, for appellants.

Robert E. Kelly, Jr., Harrisburg, for appellee Erie Ins. Co.

Bradford Dorrance, Harrisburg, for appellee Blue Shield.

Danya Armenti–George, Philadelphia, for appellee USAA Property & Cas. Ins. Co.

Before CIRILLO, TAMILIA and HESTER, JJ.

TAMILIA, Judge:

On application of counsel for appellee USAA Property and Casualty Insurance Company ("USAA"), these cases

were listed consecutively for oral argument, and *sua sponte* this Court will address the merits of the cases simultaneously as they involve identical issues. As an initial matter, however, we will set forth briefly the facts which led to each of these appeals.

## KILMORE

This appeal was taken from the Order of June 6, 1990, granting defendant/appellees' motions for summary judgment and dismissing plaintiff/appellant's complaint.[1] On February 26, 1986, appellant Barry W. Kilmore sustained various injuries in an automobile accident, including a fractured and dislocated jaw. At the time of the accident, appellant was insured under an automobile insurance policy with appellee Erie Insurance Company ("Erie")[2] and a health insurance policy with appellee Medical Service Association of Pennsylvania, t/d/b/a Pennsylvania Blue Shield ("Blue Shield"). As required by the Motor Vehicle Financial Responsibility Law,[3] the Erie policy provided up to $10,000 in first party benefits, as well as coverage beyond the $100,000 threshold for the Catastrophic Loss Fund ("CAT Fund"). The Blue Shield group policy, obtained through appellant's employer, provided certain medical coverage for the gap between the $10,000 and $100,000 levels set by the Erie policy. The Blue Shield policy, however, contained certain specifically enumerated exclusions from coverage, including treatment of the jaw injury suffered by

1. The Order was entered on June 7, 1990, and on July 3, 1990, counsel for appellant filed a praecipe to enter judgment. Notice of appeal was also filed on July 3, 1990. An Order granting summary judgment is a final, appealable Order, and therefore there was no need to take the additional step of reducing the Order to judgment. While this appeal is timely, we note this harmless defect to save counsel, who is counsel for both appellants, from the future risk of filing an untimely notice of appeal.

2. Erie has maintained throughout this case that appellant's insurance policy was issued through Erie Insurance Exchange, a related but separate and distinct insurer from Erie Insurance Company. As we decide this appeal on alternate grounds, we do not reach the merits of this argument.

3. 75 Pa.C.S. § 1701 *et seq.*

appellant, temporomandibular joint syndrome ("TMJ"). Appellant sought and received payment from Erie for the full $10,000 in first party benefits under his automobile policy, thus exhausting his medical coverage prior to any surgery to correct his TMJ.

On September 8, 1987, appellant filed a complaint on behalf of himself and his putative class against, *inter alia,* Blue Shield and Erie, alleging breach of contract, fraud and consumer violations in connection with his respective insurance policies. Appellant specifically alleged Blue Shield breached its obligations by failing to explain the terms of its group policy, including its contractual exclusion of TMJ treatment. Appellant also averred neither Blue Shield nor Erie explained the extent to which each company's policy differed from the other. Appellant further sought to represent all policyholders who purchased Erie's $10,000 first party benefit coverage, suffered loss and were subsequently denied coverage for injuries due to exclusions in their Blue Shield policies. Blue Shield and Erie each filed answers with new matter alleging appellant failed to state a cause of action, appellant lacked standing to assert his individual and class actions and appellant's individual claims were not typical of those of his alleged class. Following the completion of discovery, Blue Shield and Erie each filed motions for summary judgment and dismissal of appellant's complaint,[4] which were granted by the Order of June 6, 1990.

## PETERSEN

This appeal was taken from the August 30, 1990, Order sustaining the demurrer of appellee USAA and dismissing

---

4. During the course of discovery, appellant admitted he had not received treatment for his TMJ, and had not submitted to Blue Shield, nor had Blue Shield denied, a claim for medical expenses. Questions of ripeness and standing are not easily overlooked, but in the interests of judicial economy and fairness, and to forestall unnecessary relitigation in this matter, we will address appellant's arguments, ignoring any procedural defects which do not impinge directly on our resolution of the issues presented.

appellant Deborah L. Petersen's amended complaint. On August 5, 1986, appellant sustained injuries in an automobile accident, including a fractured and dislocated jaw. At the time of her accident, appellant had automobile insurance with USAA and health insurance with Blue Shield.[5] Appellant's USAA policy provided $20,000 in first party benefits [6] and coverage beyond the $100,000 CAT Fund threshold. Appellant's Blue Shield policy was similar to appellant Kilmore's in that it contained certain exclusions, among them one for treatment of TMJ. Appellant exhausted her $20,000 of USAA coverage without receiving treatment for her TMJ, only to discover such treatment was excluded under the terms of her Blue Shield medical coverage.

On March 26, 1990, appellant filed an amended complaint in class action against USAA and Blue Shield, similar to that of appellant Kilmore, alleging breach of contract, fraud and violations of consumer protection law with respect to her insurance coverages, and setting forth the same class action allegations. USAA filed preliminary objections in the nature of a demurrer, which the trial court sustained, finding appellant had failed to state a cause of action against USAA because USAA had no general duty to review and advise appellant of the coverages and exclusions in her Blue Shield policy.

## DISCUSSION

These appeals present this Court with the issues of whether an automobile insurance carrier has a duty to explain to its insured the extent and limits of its coverage and whether Blue Shield has a duty to inform an insured of its policy exclusions and their applicability to automobile accident cases.

---

5. In *Kilmore, supra,* the Blue Shield coverage was issued under a group policy. In the present case, appellant's amended complaint does not indicate whether her Blue Shield policy is a group policy or an individual policy.

6. The policy provided for $10,000 in first party benefits and an additional $10,000 because appellant was wearing her seat belt when the accident occurred.

■ On an appeal from the sustaining of preliminary objections in the nature of a demurrer, as well as the granting of a motion for summary judgment, our standard of review is essentially the same. We must accept as true all well-pleaded material facts set forth in the pleadings as well as all inferences reasonably deducible therefrom. *Di-Marco v. Lynch Homes*, 525 Pa. 558, 583 A.2d 422 (1990); *Jefferson v. State Farm Insurance*, 380 Pa.Super. 167, 551 A.2d 283 (1988). We will overturn the trial court's decisions only if there has been an error of law or a clear abuse of discretion. *McCain v. Pennbank*, 379 Pa.Super. 313, 549 A.2d 1311 (1988). As we find no such error or abuse in these cases, we affirm the respective Orders of court.

The law in this Commonwealth with regard to the interpretation of a contract of insurance is clear and well settled.

The goal of [interpretation] is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

*Standard Venetian Blind Co. v. Am. Empire Ins.*, 503 Pa. 300, 304, 469 A.2d 563, 566 (1983) (citations omitted). The Supreme Court in *Venetian Blind* went on to hold that where a "policy limitation relied upon by the insurer to deny coverage is clearly worded and conspicuously displayed, the insured may not avoid the consequences of that limitation by proof that he failed to read the limitation or that he did not understand it." *Id.*, 503 Pa. at 307, 469 A.2d at 567.

In a later case, this Court relied upon *Venetian Blind* and expanded its holding to also conclude that where the contested policy provisions are "clear and unambiguous, neither the insurer nor its agents have a duty to explain all of the hypothetical consequences which may result" from the coverage the insured has specifically requested. *Banker v. Valley Forge Ins. Co.*, 363 Pa.Super. 456, 465, 526

A.2d 434, 438 (1987) (rev'd on other grounds, *Banker v. Valley Forge Ins. Co.*, 401 Pa.Super. 367, 585 A.2d 504 (1991)); *see also Hess v. Allstate Insurance Co.*, 614 F.Supp. 481 (W.D.Pa.1985), *aff'd*, 804 F.2d 1248 (3d Cir. 1986).

Nonetheless, appellants remind us a plurality of the Supreme Court also has offered this recent admonition:

> The duty of an insurance company to deal with the insured fairly and in good faith includes the duty of full and complete disclosure as to all of the benefits and *every coverage that is provided* by the applicable policy or policies along with all requirements....

*Dercoli v. Pennsylvania Nat. Mut. Ins.*, 520 Pa. 471, 478, 554 A.2d 906, 909 (1989) (emphasis added). While "we find the duty enunciated in *Dercoli* to be a logical and rational one which flows from the relationship as it in fact exists between insurers and their insured," *Miller v. Keystone Ins. Co.*, 402 Pa.Super. 213, 222, 586 A.2d 936, 940 (1991), we do not find *Dercoli* to supplant or even conflict with the controlling precedent of *Venetian Blind*. As a result, the distinguishing facts of the cases now before us prevent appellants from finding the refuge they seek by attempting to expand *Dercoli* beyond its natural bounds to require insurers to disclose all possible information as to the benefits of coverage that is *not* provided.

> The imposition of the duty in *Dercoli* was premised on three factors: (1) the insurer had assumed the responsibility for processing its insured's claims; (2) the insurer knew that the insured was relying exclusively on its advice and counsel; and, (3) the insurer had knowledge regarding an additional claim for benefits to which Mrs. Dercoli was entitled and it failed to disclose such information.

*Miller, supra*, 402 Pa.Superior Ct. at 223, 586 A.2d at 941.

■ In the instant cases, we do not find the circumstances created in the insurers the same duty as was presented in *Dercoli*. Assuming, arguendo, the nature of an insurance contract presumes the insurer assumes the

responsibility for processing its insured's claims, we find no evidence the remaining *Dercoli* factors were established. Appellants have not asserted that they, as the insureds, were acting in reliance upon the insurers' advice and counsel. In fact, it appears advice and counsel from the respective insurers was neither sought nor offered, and in the absence of the former action we find no requirement of the latter.

The third and most important prong of the *Dercoli* duty as it relates to these cases concerns whether the insurers had knowledge of benefits to which appellants were entitled and failed to disclose such information. We find no evidence of any knowledge known only to the insurers, inasmuch as the insurers were unaware of the purposes to which appellants intended to apply any benefits which they might claim. The insurers' only duty was to pay out the benefits to which appellants were entitled and to provide the coverage specified in their policies, subject to any enumerated exclusions. This, it is clear, the insurers did. We find no justification in the law to impose the additional burden on insurers that they anticipate and then counsel their insured on the hypothetical, collateral consequences of the coverage chosen by the insured. The basic contractual nature of insurance coverage set forth in *Venetian Blind, supra,* and *Dercoli, supra,* requires fair dealing and good faith on the part of the insurer, not hand holding and substituted judgment. While we acknowledge insurance is an area in which the contracting parties stand in somewhat special relationship to each other, the relationship is not so unique as to compel this Court to require an insurer to explain every permutation possible from an insured's choice of coverage. Each insured has the right and obligation to question his insurer at the time the insurance contract is entered into as to the type of coverage desired and the ramifications arising therefrom. Once the insurance contract takes effect, however, the insured must take responsibility for his policy. We, therefore, decline to extend the duties of an insurer to provide ongoing advice concerning

the limits of its coverage, or even more remotely, the prospective limits of another insurer's coverage.[7]

For the foregoing reasons, we find appellants' arguments without merit, and we affirm the Orders of court.

Orders affirmed.

7. ¨ Blue Shield technically is not an "insurance company" under Pennsylvania law, but rather a "general medical service corporation" operating "nonprofit professional health service plans," and statutorily regulated by the Professional Health Services Plan Corporation Act, 40 Pa.C.S. § 6301 *et seq.* This designation is immaterial to our disposition of these cases, however, as we find the duties owed by Blue Shield to its subscribers/insureds are no greater than those in the typical insurance contract.