626 A.2d 637

Jordan M. MILLER, T/A Bainbridge Animal Hospital

v.

Augustine PERAINO, Florence Peraino, Jamie L. Sacks, Edythe Barbara Harrison, and John Doe.

Appeal of Augustine PERAINO and Florence Peraino.

Superior Court of Pennsylvania.

Argued Feb. 9, 1993.

Filed June 21, 1993.

Nancy J. Winkler, Philadelphia, for appellants.

Phillip B. Silverman, Philadelphia, for appellees.

Before OLSZEWSKI, TAMILIA and FORD ELLIOTT, JJ.

OLSZEWSKI, Judge:

Augustine and Florence Peraino ["Perainos"] appeal the order entered February 4, 1992, in the Court of Common Pleas of Philadelphia County which granted Dr. Jordan Miller's ["Miller"] preliminary objections to the Perainos' amended complaint. The incident generating this dispute began on July 14, 1990, when the Perainos took their pet Doberman, Nera, to Miller's veterinary hospital for oral surgery.

Miller performed the surgery and Mr. Peraino came to the animal hospital on July 16, 1990, to pick up Nera. Due to the large size of the dog, Mr. Peraino decided to return later with another person to help him carry her. Jamie Sacks and Edythe Harrison, two veterinary assistants, claim that Miller later viciously beat Nera to death because he was having difficulty getting the dog from the basement recovery room to

the waiting area upstairs where the dog would be picked up. Sacks claims that Miller kicked Nera and beat her with a pole until she fell backward. Harrison claims that she found the dog dead in a pool of blood in a cage. When the Perainos learned that the dog was dead, they met with Miller who told them that the dog had died of a heart attack. Subsequently, however, Sacks and Harrison, who by this time had quit their jobs because of Miller's alleged treatment of Nera, told the Perainos what they witnessed.

In August of 1990, Sacks, Harrison and the Perainos began picketing the veterinary hospital. Miller sued all four for defamation, intentional interference with a business and contractual relationship, intentional infliction of emotional distress and negligence. The Perainos filed an answer, new matter, and a counterclaim on May 24, 1991. On September 11, 1991, Miller filed preliminary objections to the counterclaim. On September 23, 1991, the Perainos filed an amended answer, new matter, and counterclaim. On October 2, 1991, Miller filed preliminary objections in the nature of a demurrer. The lower court sustained the demurrer to Counts 1 and 5 of the Perainos' complaint, which alleged that the Perainos suffered intentional infliction of emotional distress. This appeal followed.

We note that only part of the Perainos' counterclaim has been dismissed as a result of the demurrer. Thus, it is necessary to inquire whether this appeal is interlocutory. "A final order is one which ends the litigation or, alternatively, disposes of the entire case.... [A]n order is interlocutory and not final unless it effectively puts the litigant out of court.... The finality of an order is a judicial conclusion which can be reached only after an examination of its ramifications."

*Praisner v. Stockner,* 313 Pa.Super. 332, 337, 459 A.2d 1255, 1258 (1983). We have held that the dismissal of one or several counts from a multi-count complaint may be a final appealable order. *Motheral v. Burkhart,* 400 Pa.Super. 408, 583 A.2d 1180 (1990). In *Motheral,* we found that if the count dismissed states a cause of action separate from the remaining

counts, the order dismissing it is final and appealable. On the other hand, if the count dismissed states only an alternate theory of recovery, the order dismissing that count is interlocutory and not appealable. *Id.*

■ In this case, Counts I, V, VIII, and IX were dismissed.[1] The Perainos appeal the dismissal of Counts I and V. Count I alleges that the Perainos suffered intentional infliction of emotional distress as a result of the extreme and outrageous conduct which allegedly led to Nera's death. Count V alleges that Mr. Peraino suffered intentional infliction of emotional distress as a result of the same conduct complained of in Count I, but additionally alleges that Mr. Peraino suffered intentionally inflicted emotional distress directly resulting from Miller's outrageous behavior during the picketing. The trial court found that these counts were based on injuries separate from those alleged in the remainder of the complaint. Trial court opinion, 2/4/92, at 5. Mr. Peraino is put out of court entirely as a result of the dismissal of Counts I and V. He has no other claims in the complaint. The dismissal of Count I, concerning Mrs. Peraino's intentionally inflicted emotional distress, is based on Miller's conduct toward Nera. The other counts in the complaint concerning Mrs. Peraino involve battery, assault, and emotional distress intentionally inflicted upon her directly, rather than as to the dog. Therefore, the dismissal of Counts I and V satisfy the separate cause of action requirement of *Praisner* and *Motheral.* This appeal is properly before the Court.

The sole issue presented for our review is whether the lower court erred when it granted Miller's preliminary objections and dismissed the claims for intentional infliction of emotional distress as to Florence and Augustine Peraino in Count 1, and as to Augustine Peraino in Count 5.

■ Our scope of review on an appeal from an order sustaining preliminary objections in the nature of a demurrer is that we must accept as true all well-pleaded facts and all

---

1. Counts VIII and IX were brought on behalf of Ms. Sacks and Ms. Harrison, Miller's former veterinary assistants. The dismissal of those counts is not an issue on this appeal.

reasonable inferences from the facts as set forth in the pleadings. *Kilmore v. Erie Ins. Co.*, 407 Pa.Super. 245, 595 A.2d 623 (1991). We will reverse the trial court's decision only if there has been an error of law or a manifest abuse of discretion. *Id.*

Count 1 of the counterclaim alleges that the Perainos suffered intentional infliction of emotional distress as a result of the extreme and outrageous conduct which allegedly led to Nera's death. Count 1 alleges that Mrs. Peraino sought medical treatment. Count 5 alleges that Mr. Peraino suffered intentional infliction of emotional distress as a result of the conduct which allegedly led to Nera's death, but also alleges that Mr. Peraino suffered emotional distress as a result of Miller's outrageous conduct while Peraino picketed. Miller allegedly physically intimidated Mr. Peraino and uttered obscene, disgusting, and outrageous statements about the physical characteristics of Mr. and Mrs. Peraino and Nera while they picketed the hospital. There is no allegation in Count 5 that Mr. Peraino sought medical treatment.

The Restatement (Second) of Torts defines the intentional infliction of emotional distress:

One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Restatement (Second) of Torts, § 46(1). The Pennsylvania Supreme Court has "acknowledged but has never had occasion to adopt Section 46 as the law in Pennsylvania." *Kazatsky v. King David Memorial Park*, 515 Pa. 183, 527 A.2d 988 (1987). The Court, however, concluded that "if section 46 of the Restatement is to be accepted in this Commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence." *Id.* at 197, 527 A.2d at 995.[2]

---

**2.** A panel of this Court has recently held that medical evidence is not necessary to establish a claim for intentional infliction of emotional distress. *Hackney v. Woodring*, 424 Pa.Super. 96, 622 A.2d 286 (1993) (Tamilia, J., dissenting). In *Hackney*, the plaintiff, a young woman,

■ Count 1 of the Perainos' complaint alleges that Mrs. Peraino sought medical attention. The outrageous conduct upon which Count 1 is based, however, is Miller's behavior toward Nera, which allegedly caused the dog's death and the Perainos' emotional distress. It is worth noting that the Restatement contemplates recovery for intentional infliction of emotional distress when a tortfeasor's conduct is directed at a third party. Recovery, however, would appear to be limited:

(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

(b) to any other person who is present at the time, if such distress results in bodily harm.

Restatement (Second) of Torts, § 46(2)(a), (b). In Pennsylvania, dogs are legally considered to be property. 3 P.S. § 459–601(a) ("all dogs are hereby declared to be personal property ...". Therefore, they are not members of one's family or persons, as contemplated by the Restatement § 46(2)(a) or (b). Moreover, this Court has held that intentional infliction of emotional distress cannot legally be founded upon a veterinarian's behavior toward an animal. *Daughen v. Fox*, 372 Pa.Super. 405, 539 A.2d 858, 864 (1988). In *Daughen*, we stated that plaintiffs' complaint, which alleged intentional infliction of emotional distress as a result of a veterinarian's treatment of their dog, did not set forth a cause of action. Our rationale was that the principal misconduct was focused upon appellants' dog, and not upon appellants themselves. *Id.* We find the same rationale applies to Count 1 of the Perainos' complaint. The demurrer as to Count 1 was properly granted.

suffered a pattern of egregious physical and sexual abuse and emotional distress at the hands of her employer. The *Hackney* panel reasoned that to impose the requirement that the plaintiff have sought medical help before permitting recovery would have only compounded her psychological distress. The panel found this to be unacceptable as a matter of public policy and remanded with instructions to reinstate the jury verdict in favor of the plaintiff. *Hackney*, however, is factually and procedurally different from this case. The facts of the case at bar do not warrant a departure from the well-settled rule of *Kazatsky*.

As stated above, the Pennsylvania Supreme Court has held that as far as section 46 of the Restatement (Second) of Torts is accepted in Pennsylvania, competent medical evidence must be presented in support of a claim for intentional infliction of emotional distress. *Kazatsky, supra.* In addition, the *Kazatsky* Court noted the type of conduct contemplated by the Restatement's drafters:

The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt.

*Id.* at 201, 527 A.2d at 997, *citing* § 46 comment d, Restatement (Second) of Torts.

Unlike Count 1, Count 5 alleges conduct by Miller against Mr. Peraino. The lower court, however, found that neither the degree of outrageous conduct nor the nature and extent of

the emotional injuries alleged in Count 5 justified a finding of damages for intentional infliction of emotional distress. Count 5 alleges that: Miller recorded Mr. Peraino's truck license plate number and said "Nice truck, soon I'll own it," ¶ 48, Count 5 (R.R. at 68a); that Miller drove by the Perainos' home and said "Nice porch on your house. Soon I'll own your house," *Id.*; that Miller attempted to lure Mr. Peraino into a fist fight by calling him stupid and a "really stupid guy," *Id.*; that Miller said that Nera was "as fat as a horse," *Id.*; that Miller said that Nera was "fat and ugly like [Mrs. Peraino]," *Id.* at 69a, and asked whether the Perainos had made a rug out of Nera, *Id.*; and that Miller placed the Perainos' phone number on public phones with the notation that a good time could be had by calling "Flo," *Id.* While we recognize that these alleged statements would be unkind and unpleasant, the lower court did not abuse its discretion by finding that these were not the type of statements that merit damages for conduct "beyond all possible bounds of decency, . . . atrocious, and utterly intolerable in a civilized society." Restatement (Second) of Torts, § 46, comment d.

For the reasons set forth above, the order of the court of common pleas is affirmed.