Craig NELSON

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.**

**No. CIV.A. 97–4653.**

United States District Court, E.D. Pennsylvania.

Dec. 12, 1997.

John G. Bravacos, Palma & Sbarbaro, LLC, West Chester, PA, for Craig Nelson.

Louis E. Bricklin, Erin M. Donaldson, Bennett, Bricklin & Saltzburg, Philadelphia, PA, for State Farm Mut. Automobile Ins. Co.

## *MEMORANDUM*

DALZELL, District Judge.

Defendant State Farm Mutual Automobile Insurance Company has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56, contending that plaintiff Craig Nelson's action is time-barred.[1] At issue is the question of whether under Pennsylvania law an insured's action for bad faith against an insurer under 42 Pa. Cons.Stat. Ann. § 8371 is subject to the two year statute of limitations for torts, *see* 42 Pa. Cons.Stat. Ann. § 5524(7),[2] the four year statute of limitations for contracts, *see* 42 Pa. Cons.Stat. Ann. § 5525(8),[3] or the six year "catchall" statute of limitations under 42 Pa. Cons.Stat. Ann. § 5527.[4]

*The Erie Doctrine*

The question of which statute of limitations applies to an action under § 8371 is one that the Supreme Court of Pennsylvania has not addressed. When the highest court of a state has not addressed an issue of law, a federal court sitting in diversity must predict

---

1. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," Fed.R.Civ.P. 56(c).

2. Section 5524 states in pertinent part:

 The following actions and proceedings must be commenced within two years: ... (7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

 42 Pa. Cons.Stat. Ann. § 5524(7).

3. Section 5525 states in pertinent part:

 The following actions and proceedings must be commenced within four years: ... (8) An action upon a contract, obligation or liability founded upon a writing not specified in paragraph (7), under seal or otherwise, except an action subject to another limitation specified in this subchapter.

 42 Pa. Cons.Stat. Ann. § 5525(8).

4. Section 5527 states:

 Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years.

 42 Pa. Cons.Stat. Ann. § 5527.

how that court would decide the issue were it confronted with the problem. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Packard v. Provident Nat. Bank,* 994 F.2d 1039, 1046 (3d Cir.1993). In carrying out that task, a federal court must "consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand," *Packard,* 994 F.2d at 1046, including the decisions of state intermediate appellate courts as well as other state courts on that issue. *See Ciccarelli v. Carey Canadian Mines Ltd.,* 757 F.2d 548, 553 n. 3 (3d Cir. 1985) (citing cases).[5]

*Bad Faith Actions under Section 8371*

In 1990, the Pennsylvania General Assembly enacted 42 Pa. Cons.Stat. Ann. § 8371 to create a statutory remedy for bad faith conduct in the handling of insurance policies. The statute provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons.Stat. Ann. § 8371.

■ The statute does not define "bad faith" or establish the elements to make out a claim of bad faith. Recent decisions by our Court of Appeals and the Superior Court of Pennsylvania, however, suggest a two-part test, both elements of which requiring proof by clear and convincing evidence: "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer

knew or recklessly disregarded its lack of reasonable basis." *Klinger v. State Farm Mut. Auto. Ins. Co.,* 115 F.3d 230, 233 (3d Cir.1997); *see also Polselli v. Nationwide Mut. Fire Ins. Co.,* 23 F.3d 747, 752 (3d Cir.1994); *Terletsky v. Prudential Property & Cas. Ins. Co.,* 437 Pa.Super. 108, 649 A.2d 680, 688 (1994).

For statute of limitations purposes, however, what kind of action is one under § 8371?

*Section 8371 as a Contractual Cause of Action*

■ It is clear that § 8371 does not sound exclusively in contract law. The fact that one of § 8371's primary remedies is the award of punitive damages illustrates that the statute is not exclusively contract-based. In Pennsylvania, it is well-settled that the purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him and others from similar conduct in the future. *See Kirkbride v. Lisbon Contractors, Inc.,* 521 Pa. 97, 555 A.2d 800, 803 (1989).

■ Pennsylvania law is equally clear that punitive damages are not recoverable in an action for breach of contract. *See AM/PM Franchise Assoc. v. Atlantic Richfield,* 526 Pa. 110, 584 A.2d 915, 927 (1990) (holding in a contract case that "we do not believe that our case law or the Uniform Commercial Code authorizes a legitimate claim for exemplary damages"). *See also Thorsen v. Iron and Glass Bank,* 328 Pa.Super. 135, 476 A.2d 928, 932 (1984) (citing cases).

Furthermore, it is worth noting that the emerging jurisprudence, albeit not from the Pennsylvania Supreme Court, treats § 8371 as creating a separate and distinct cause of action from the underlying contract claim against the insurer. *See e.g. Romano v. Nationwide Mut. Fire Ins. Co.,* 435 Pa.Super. 545, 646 A.2d 1228, 1231 (1994) ("the emerging jurisprudence treats Section 8371 as creating a separate and distinct cause of action"); *March v. Paradise Mutual Insur. Co.,* 435 Pa.Super. 597, 646 A.2d 1254, 1256

---

**5.** We recognize that such *Erie* predictions are perilous business. *See* Dolores K. Sloviter, *A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism,* 78 Va. L.Rev. 1671, 1679–81 n. 53 (1992), where Chief Judge Sloviter discusses the difficulty of making *"Erie* guesses", and cites specific cases where federal predictions of state supreme courts' rulings proved wrong.

(1994) ("a claim brought under ·section 8371 is a cause of action which is separate and distinct from the underlying contract claim"); *Boring v. Erie Ins. Group,* 434 Pa.Super. 40, 641 A.2d 1189, 1190 (1994) (holding that although appellant's ·insurance coverage claim had not yet been decided, as appellant's bad faith claim was premised upon § 8371, it constituted a clear and distinct cause of action and, therefore, the dismissal of appellant's § 8371 claim was instantly appealable). *See also Younis Bros. & Co. v. Cigna Worldwide Ins. Co.,* 899 F.Supp. 1385, 1396 (E.D.Pa.1995) ("Courts have held that the Legislature enacted § 8371 to curtail bad faith practices on the part of insurers by affording insureds a cause of action that is separate and independent from the claim on the insurance contract"); *Margolies v. State Farm Fire and·Cas. Co.,* 810 F.Supp. 637, 642 . (E.D.Pa.1992) ("[E]ven if plaintiffs' breach of contract claim were barred by the policy's limitation provision, the § 8371 bad faith claim would survive, since it is independent of the underlying claim."); *Kauffman v. Aetna Casualty and Surety Co.,* 794 F.Supp. 137, 140 (E.D.Pa.1992) (holding that section 8371 creates a separate cause of action rather than simply an additional remedy).

■ Accordingly, an action under § 8371 appears to be a separate and distinct one that does not sound exclusively in contract law. The issue remains, however, whether this cause of action sounds primarily in tort, thereby giving it a statute of limitations of two years pursuant to 42 Pa. Cons.Stat. Ann. § 5524(7), or is so entwined with both tort and contract law that it cannot be classified, thereby falling under the six year "catchall" statute of limitations pursuant to 42 Pa. Cons.Stat. Ann. § 5527.

*Section 8371 As Interpreted To Date In This Court*

Two recent cases in this Court have predicted that the Pennsylvania Supreme Court would find that an action under § 8371 is so steeped in both contract and tort law that the six year statute of limitations should apply. *See Cynthia Miller v. The Cincinnati Insurance Co.,* Civ. No. 97–1223 (E.D.Pa. July 9, 1997) ("*Cincinnati Insurance* "); *Woody v. State Farm Fire and Casualty Co.,* 965 F.Supp. 691 (E.D.Pa.1997) ("*Woody* ").

In *Woody,* the Court based its decision mainly upon the *Black's Law Dictionary* definition of "bad faith" which had been adopted by earlier decisions of our Court of Appeals and the Pennsylvania Superior Court. *See Woody,* 965 F.Supp. at 693. *Black's* defines "bad faith" in the insurance context as:

Insurance. "Bad Faith" on the part of insurer is any frivolous or unfounded refusal to pay proceeds. of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach·of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill-will;. mere negligence or bad judgment is not bad faith.

*Id.* (citing cases and *Black's Law Dictionary* ). Relying on this definition, *Woody* concluded that an action under § 8371 "can sound in either tort or contract, depending upon the conduct exhibited." *Id.* The Court reached this conclusion because while the definition of "bad faith" included the concept of fraud, which sounds in tort, the definition also mentioned the concept of good faith and fair dealing, which stems from breach of contract. *See id.* *Woody* then surmised that because a bad faith action could not be classified as either a tort or a contract, and was, in essence, *sui generis* in nature, the six year "catchall" statute of limitations should apply. *See id.* at 695.[6]

---

6. In reaching this conclusion, *Woody* relied upon the Pennsylvania Superior Court decision in *Gabriel v. O'Hara,* 368 Pa.Super. 383, 534 A.2d 488 (1987), which dealt with an analogous situation when determining the applicable statute of limitations period for actions brought under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). In *Gabriel,* the Superior Court concluded that an action under the. UTPCPL covers an assortment of unfair practices that can sound in misappropriation, or trademark infringement, or disparagement, or false advertising, or fraud, or breach of contract, or breach of warranty depending upon the circumstances. *See Gabriel,* 534 A.2d at 494. Because disparagement, fraud, and breach

Similarly, in *Cincinnati Insurance,* the Court in a three-page order also predicted that the Pennsylvania Supreme Court would apply a six year statute of limitations to actions under § 8371. In reaching its conclusion, *Cincinnati Insurance* relied heavily upon *Woody*'s logic, as well as upon a quotation interpreting the applicability of § 8371 in the recent decision of our Court of Appeals in *Klinger v. State Farm Mutual Automobile Insur. Co.,* 115 F.3d 230 (3d Cir. 1997). In *Klinger,* our Court of Appeals characterized § 8371 as two-fold in purpose: "The obvious design of [§ 8371] is, first, to place [the insureds] in the same economic position they would have been in had the insurer performed as it promised, by awarding attorney's fees as additional damages; and second, to punish [the insurer] for giving primacy to its own self-interest over that of the [insureds] by awarding punitive damages." *Id.* at 236.

On the basis of this quote, *Cincinnati Insurance* concluded that § 8371 is "primarily compensatory" in nature, and therefore found that the "catchall" provision of § 5527 was "the most closely analogous limitations provision." *Cynthia Miller v. The Cincinnati Insurance Co.,* Civ. No. 97–1223, at n. 1 (E.D.Pa. July 9, 1997).[7]

*Section 8371 as a Tort*

Recognizing its perils, we predict that the Supreme Court of Pennsylvania would conclude that an action under § 8371 sounds in tort, and thus would be subject to a two-year statute of limitations pursuant to 42 Pa. Cons.Stat. Ann. § 5524(7). We reach this conclusion based upon the history of "bad faith" as a cause of action, the nature of a bad faith cause of action, and the approaches

taken by the heavy majority of other state supreme courts. .

A. *History of "Bad Faith" as a Cause of Action*

The creation of a cause of action for "bad faith" is, as noted, a recent development in Pennsylvania. One of the first states to recognize such a common law cause of action was the California Supreme Court in the leading case of *Gruenberg v. Aetna Insurance Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032, 1038 (1973), which held that "when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort". In the years that followed *Gruenberg,* at least thirty states recognized a cause of action for "bad faith" in the insurance context based upon a variety of different theories and standards. *See McCullough v. Golden Rule Ins. Co.,* 789 P.2d 855, 858 n. 5–8 (Wyo.1990) (recognizing bad faith as a common law tort action and providing a then-current state-by-state synopsis).[8]

In 1981, in *D'Ambrosio v. Pennsylvania National Mut. Cas. Ins. Co.,* 494 Pa. 501, 431 A.2d 966 (1981), the Pennsylvania Supreme Court was faced with the question of whether to create a common law cause of action for bad faith. Recognizing that California and many other states had created this "new tort," *id.* 431 A.2d at 970 (quotation and citation omitted), the Pennsylvania Supreme Court declined to create a new common law cause of action for bad faith by stating that:

Surely it is for the Legislature to announce and implement the Commonwealth's public policy governing the regulation of insurance carriers. In our view, it is equally for the Legislature to determine whether

---

of contract are governed by different limitations periods, the Superior Court concluded that the six year limitations period pursuant to 42 Pa. Cons.Stat. Ann. § 5527 should apply to avoid inconsistent determinations as to the limitations period. *See id.*

**7.** Parenthetically, we note that neither *Woody* nor *Cincinnati Insurance* has been reviewed. *Woody* was to be certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), but the plaintiff voluntarily withdrew the lawsuit prior to the appeal for reasons unrelated to the statute of

limitations issue. *See* Defendant's Brief at p. 21, n. 11. *Cincinnati Insurance* is still pending.

**8.** We note that although the approaches taken by state supreme courts differ in the standards they have established for a bad faith cause of action, an in-depth inquiry into those differences is not relevant to this case. The only pertinent issue here is whether a state's creation of a cause of action for bad faith sounds in tort, contract, or both. *See infra* at 533–534, "Approaches Taken by Other State Supreme Courts."

sanctions beyond those created under the [Unfair Insurance Practices] Act are required to deter conduct which is less than scrupulous.

*D'Ambrosio,* 431 A.2d at 970.

It is notable that while rejecting the creation of a new common law cause of action for bad faith, the Pennsylvania Supreme Court in *D'Ambrosio* described the emerging cause of action for bad faith by reference to three other state supreme court cases: *Bibeault v. Hanover Ins. Co.,* 417 A.2d 313 (R.I.1980), *Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 271 N.W.2d 368 (1978), and *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973). All three of these opinions not only recognized a common law cause of action for bad faith, but in doing so specifically found that the action sounded in tort.[9]

Nine years later, in 1990, the Pennsylvania General Assembly finally accepted *D'Ambrosio* 's invitation and enacted 42 Pa. Cons.Stat. Ann. § 8371 to create a statutory remedy for bad faith conduct in the handling of insurance policies. Several courts and commentators have concluded that the passage of § 8371 was indeed in direct response to the *D'Ambrosio* opinion. *See Polselli v. Nationwide Mut. Fire Ins. Co.,* 23 F.3d 747, 750 (3d Cir.1994) ("In *D'Ambrosio* ... the Supreme Court of Pennsylvania held that there is no common law remedy under Pennsylvania law for bad faith on the part of insurers. In response, the Pennsylvania legislature enacted 42 Pa.C.S.A. § 8371 which creates a statutory remedy for bad faith conduct."); *see also Lombardo v. State Farm Mutual Auto. Ins. Co.,* 800 F.Supp. 208, 213 (E.D.Pa.1992) (same); *Liberty Mut. Ins. Co. v. Paper Mfg. Co.,* 753 F.Supp. 156, 158 (E.D.Pa.1990); Tina M. Oberdorf, *Bad Faith Insurance Litigation in Pennsylvania: Recurring Issues Under Section 8371,* 33 Duq. L.Rev. 451, 452–53 (1995); Joseph Decker, *Insurer Liability Under Pennsylvania's Bad Faith Statute,* Pa. B. Ass'n Q., 45, 49 (April 1994); Christopher Hasson, Comment, *The 1990 Pennsylvania Auto Insurance Law: An Analysis of "Bad Faith" and the "Limited Tort Option,"* 29 Duq. L.Rev. 619, 630–31 (1991).

Accordingly, on the basis of the historical record, we believe that the Pennsylvania Supreme Court in *D'Ambrosio* contemplated the creation of a tortious cause of action for bad faith, but explicitly left the creation of such an action to the discretion of the General Assembly. There is also little doubt that § 8371 owes its existence to *D'Ambrosio* 's invitation.

### B. *Nature of the Bad Faith Action*

Aside from its historical roots, we also find that the nature of the bad faith cause of action under § 8371 sounds in tort law.

#### (i) *The Underlying Contract Claim*

■ The Pennsylvania Supreme Court has long held that an insurer must act with the utmost good faith toward its insured. *See Fedas v. Insurance Co. of Pa.,* 300 Pa. 555, 151 A. 285, 286 (1930). This heightened duty is necessary because of the special relationship between the insurer and the insured, as well as very nature of the insurance contract. The insurer's duty of good faith, therefore, is contractual and arises because the insurance company assumes a fiduciary status by virtue of the policy's provisions which give the insurer the right to handle claims and control settlement on behalf of the insured. *See Gray v. Nationwide Mut. Ins. Co.,* 422 Pa. 500, 223 A.2d 8 (1966); *see also Romano v. Nationwide Mut. Fire Ins. Co.,* 435 Pa.Super. 545, 646 A.2d 1228, 1231 (1994).

#### (ii) *Bad Faith as a Distinct Tort Action*

As noted above, the emerging jurisprudence in Pennsylvania treats an action for bad faith under § 8371 as a separate and distinct cause of action from the underlying contract claim. To determine whether a claim of bad faith has merit, one must look at the behavior of the insurer toward the insured and measure its reasonableness. *See Klinger v. State Farm Mut. Auto. Ins. Co.,* 115 F.3d 230, 233 (3d Cir.1997) (explaining the two-step reasonableness test that must be satisfied to bring a successful § 8371 ac-

---

**9.** These state supreme courts only differed in the required elements of proof.

tion); *Nealy v. State Farm Mut. Auto. Ins. Co.*, 695 A.2d 790, 794 (Pa.Super.1997) ("A § 8371 bad faith claim ... is initiated based upon behavior of the insurance company occurring subsequent to the negligent or intentional behavior of a third party that spawned the contractual suit.").

Such an inquiry into the reasonableness of the insurer's *behavior*, to see whether it is perhaps more than mere negligence or bad judgment, *see Klinger*, 115 F.3d at 233 (citing the definition of "bad faith"), bears the classic earmarks of the law of torts. In describing these emblems of tort, Prosser states that while a tort is difficult to define or to describe with a single guiding principle,

> So far as there is one central idea, it would seem that it is that liability must be based upon conduct which is socially unreasonable. The common thread woven into all torts is the idea of unreasonable interference with the interests of others. In many cases, of course, what is socially unreasonable will depend upon what is unreasonable from the point of view of the individual. The tort-feasor usually is held liable for acting with an intention that the law treats as unjustified, or acting in a way that departs from a reasonable standard of care.

W. Page Keeton, et al., *Prosser and Keeton on Torts* § 1, at 6 (5th ed.1984).

It is useful here to contrast this basic understanding of torts with that of contracts. The law of contracts has been defined as: "[A] promise or set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." *Restatement (Second) of Contracts* § 1 (1981). In a more recent analysis of the law of contracts, Professor Farnsworth notes two limitations on the scope of this broad definition. *See* E. Allan Farnsworth, *Farnsworth on Contracts* § 1.1, at p. 4 (1990). "The first is that the law of contracts is confined to promises that the law will *enforce*. It is therefore concerned primarily with *exchanges*." *Id.* (em-

phasis in original). "The second limitation suggested by this definition is that the law of contracts is confined to *promises*. It is therefore concerned with exchanges that relate to the *future* because a 'promise' is a commitment by a person as to future behavior." *Id.* at 5 (emphasis in original).

 Thus, torts concerns itself with standards of conduct that society imposes. Contracts concerns itself with promises the parties themselves make and exchange. Bad faith is more akin to the former than to the latter because it is precisely such an exogenous standard.

Accordingly, while an action under § 8371 is factually linked to the underlying contractual duty of good faith and fair dealing upon which the insured can sue the insurer for breach of contract, we predict that the Pennsylvania Supreme Court would find that an action for bad faith under § 8371 is a separate, independent tort.

### C. *Approaches Taken by Other State Supreme Courts*

At least twenty-nine states which recognize a cause of action for bad faith have chosen to characterize the cause of action as a tort.[10]

While a few state supreme courts have held that such a cause of action sounds exclusively in contract, *see e.g. Pickett v. Lloyd's*, 131 N.J. 457, 621 A.2d 445, 452 (1993), and a few others have adopted a hybrid tort/contract theory, *see e.g. Dailey v. Integon General Ins. Co.*, 75 N.C.App. 387, 331 S.E.2d 148 (1985), at least twenty-nine states seem to recognize the bad faith breach of a first-party insurance contract as a common law tort. *See* Douglas R. Richmond, *The Two–Way Street of Insurance Good Faith: Under Construction, But Not Yet Open*, 28 Loy. U. Chi. L.J. 95, 107 n. 74 (1996) (citing *Coleman v. Gulf Life Ins. Co.*, 514 So.2d 944, 946 (Ala.1987); *State Farm Fire & Cas. Co. v. Nicholson*, 777 P.2d 1152, 1156 (Alaska 1989); *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490,

---

**10.** It is nearly impossible to state with certainty the exact number of states recognizing a cause of action for bad faith or to classify the exact standards that they have established. *See* Randy Papetti, note, *The Insurer's Duty of Good Faith in the Context of Litigation*, 60 Geo. Wash. L.Rev. 1931, 1941 n. 53 (1992) (noting the difficulty in classifying different states).

**534**

733 P.2d 1073, 1079–80 (1987); *Aetna Cas. & Sur. Co. v. Broadway Arms Corp.*, 281 Ark. 128, 664 S.W.2d 463, 465 (1984); *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032, 1038 (1973)(en banc); *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo.1985)(en banc); *Grand Sheet Metal Prods. Co. v. Protection Mut. Ins. Co.*, 34 Conn.Supp. 46, 375 A.2d 428, 430 (1977); *Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 368 (Del.Super.Ct.1982); *Allstate Ins. Co. v. Douville*, 510 So.2d 1200, 1202 (Fla.Dist.Ct. App.1987); *Best Place, Inc. v. Penn Am. Ins. Co.*, 82 Hawai'i 120, 920 P.2d 334, 336 (1996); *White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 730 P.2d 1014, 1018 (1986); *Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 519 (Ind.1993); *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 794 (Iowa 1988); *Curry v. Fireman's Fund Ins. Co.*, 784 S.W.2d 176, 177–78 (Ky.1989); *Weems v. American Sec. Ins. Co.*, 486 So.2d 1222, 1226 (Miss.1986); *Lipinski v. Title Ins. Co.*, 202 Mont. 1, 655 P.2d 970, 977 (1982); *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769, 776 (1991); *Pemberton v. Farmers Ins. Exch.*, 109 Nev. 789, 858 P.2d 380, 382 (1993); *Chavez v. Chenoweth,* 89 N.M. 423, 553 P.2d 703, 709 (App.1976); *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 452 N.E.2d 1315, 1320 (1983); *Marshall v. Universal Life Ins. Co.*, 831 P.2d 651, 653–54 (Okla.App.1991); *Bibeault v. Hanover Ins. Co.*, 417 A.2d 313, 319 (R.I.1980); *Carter v. American Mut. Fire Ins. Co.*, 279 S.C. 367, 307 S.E.2d 225, 226 (1983); *In Matter of Certification of a Question of Law from U.S. Dist. Court, Dist. of South Dakota (Champion v. U.S. Fidelity & Guar. Co.)*, 399 N.W.2d 320, 322 (S.D.1987); *MFA Mut. Ins. Co. v. Flint,* 574 S.W.2d 718, 721 (Tenn.1978); *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987); *Bushey v. Allstate Ins. Co.*, 164 Vt. 399, 670 A.2d 807, 809 (1995); *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368, 376–77

(1978); *McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855, 857–59 (Wyo.1990)).

The only condition that would give us any confidence in predicting that the Pennsylvania Supreme Court would not follow such a lopsided balance of state authority would be if we were to find some indicia of contrary views from any Justices of the Pennsylvania Supreme Court. The parties have not cited us to any such expressions from the Justices, and we have found none.[11]

*Conclusion*

The Pennsylvania Supreme Court in 1981 having considered bad faith as a "new tort", and given the weight of state law authority since then, we predict that the Supreme Court of Pennsylvania would conclude that an action under § 8371 sounds in tort, and thus would be subject to a two year statute of limitations under 42 Pa. Cons.Stat. Ann. § 5524(7). As the plaintiff here has conceded that his action was filed more than two years after the defendant's alleged bad faith conduct, *see* Plaintiff's Reply at ¶ 6, we will grant defendant's motion for summary judgment.

---

**11.** It is worth noting in passing that our decision that § 8371 sounds in tort is fortified by the rule of statutory construction that the legislature does not intend an absurd or unreasonable result. *See* 1 Pa. Cons.Stat. Ann. § 1922(1). Under the logic of *Woody* and *Cincinnati Insurance,* an action under 42 Pa. Cons.Stat. Ann. § 8371 sounds both in tort (with a two year limitations period) and contract (with a four year limitations period). It

is hard to conceive that the Pennsylvania General Assembly could have intended to provide a six year limitations period for a bad faith claim under § 8371 if the cause of action sounded in areas of the law with only two and four year limitations periods. Put another way, given the options of two *or* four years, it does not strike us as a reasonable reading to add the two periods together.