**Hospital Shared Services v. CIGNA Insurance Co.**

C.P. of Allegheny County, no. GD 95-2956.

*Jeffrey B. Fienberg,* for plaintiff.
*Daniel F. LaCava* and *Henry M. Perlowski,* for defendant CIGNA Insurance Company.

*Mary Ann DiIanni,* for defendant Meyer & Eckenrode Insurance Group Inc.

WETTICK, *J.,* November 16, 1998—The subject of this opinion and order of court is plaintiff's motion for leave to amend complaint. The issue raised through this motion is whether statutory bad faith claims based on 42 Pa.C.S. §8371 are governed by the two-year limitation period governing torts (42 Pa.C.S. §5524(7)) or the six-year "catchall" limitation period (42 Pa.C.S. §5527). The Pennsylvania appellate courts have not addressed this issue.

Plaintiff is a named insured under CIGNA policies issued between 1990 and 1993 providing directors and officers with liability coverage. On February 16, 1994, CIGNA advised plaintiff that it would not provide a defense and/or indemnify plaintiff with respect to an underlying lawsuit purportedly covered by the CIGNA policies. In 1995, plaintiff filed a complaint which raised against CIGNA causes of action for breach of contract and promissory estoppel.

In September 1998, plaintiff presented a motion for leave to amend its complaint, seeking to raise a bad faith claim against CIGNA based on allegations that CIGNA purposefully failed to conduct a timely investigation of the claims asserted in the underlying lawsuit.[1] Through this motion, plaintiff is seeking to raise a new cause of action. See *March v. Paradise Mutual Insurance*

---

1. In its proposed amended complaint, plaintiff alleges (1) that the reason CIGNA gave for denying coverage was that plaintiff had failed to furnish notice of the claim and its eventual settlement in a timely manner and (2) that documents produced in April 1997 established that CIGNA knew of the underlying lawsuit in sufficient time to participate in the defense and settlement of the lawsuit.

*Co.,* 435 Pa. Super. 597, 600-601, 646 A.2d 1254, 1256 (1994). CIGNA opposes the motion on the basis of established Pennsylvania case law holding that a court shall not permit an amendment which raises a new cause of action after the statute of limitations has expired.

CIGNA's argument that the two-year limitation period applies is based on the rationale which the United States District Court for the Eastern District of Pennsylvania utilized in *Nelson v. State Farm Mutual Automobile Insurance Co.,* 988 F. Supp. 527 (E.D. Pa. 1997).[2] In that case, the plaintiff's section 8371 action was filed more than two years after the defendant's alleged bad faith conduct. The court granted the defendant's motion for summary judgment on the ground that an action for bad faith against an insurer under section 8371 is subject to the two-year statute of limitations for torts.

The controlling issue, according to the court, was whether a cause of action under section 8371 sounds primarily in tort, thereby giving it a two-year statute of limitations; whether it sounds exclusively in contract law, thereby giving it a four-year statute of limitations; or whether this cause of action is so intertwined with both tort and contract law that it cannot be classified, thereby falling within the six-year catchall statute of limitations. The court concluded that a bad faith action sounds in tort law because of the nature of the bad

---

2. In *Susich v. Prudential,* 52 Beaver C.L.J. 168 (1998), the Court of Common Pleas of Beaver County ruled that a section 8371 claim is governed by the two-year limitation period. In *Miller v. Cincinnati Insurance Co.,* civ. no. 97-1223 (E.D. Pa. July 9, 1997), and *Woody v. State Farm Fire and Casualty Co.,* 965 F. Supp. 691 (E.D. Pa. 1997), the courts ruled that the six-year statute of limitations applies to a section 8371 action.

faith action and the history of bad faith as a cause of action.

The court stated that its position was supported by the manner in which the Pennsylvania Supreme Court and the Pennsylvania Legislature had addressed bad faith. According to the *Nelson* opinion, in 1981 in *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 494 Pa. 501, 431 A.2d 966 (1981), the Pennsylvania Supreme Court declined to create a "new tort"—a common-law cause of action for bad faith; however, it invited the legislature to do so. In 1990, the Pennsylvania Legislature enacted 42 Pa.C.S. §8371 to create this new tort that the *D'Ambrosio* opinion had invited the legislature to create.

I disagree with the *Nelson* opinion's characterization of *D'Ambrosio*. In *D'Ambrosio*, the plaintiffs argued that the Pennsylvania Supreme Court should follow the lead of the California courts in creating a cause of action in tort for breach of an implied covenant of good faith and fair dealing because this is the only remedy that could prevent insurance industry abuse in handling first party claims. The Supreme Court responded to this argument as follows: The legislature has made dramatic, sweeping efforts to curb bad faith conduct through the enactment of the Unfair Insurance Practices Act, Act of July 22, 1974, P.L. 589, 40 P.S. §§1171.1-1171.15. There is no evidence to suggest that the system of sanctions established under the Unfair Insurance Practices Act must be supplemented by a judicially created cause of action. The state legislature is capable of prohibiting what are considered to be unfair claims handling practices and of imposing penalties for violations. Consequently, it is for the legislature "to determine whether sanctions beyond those created

under the Act are required to deter conduct which is less than scrupulous." *Id.* at 508, 431 A.2d at 970.

The *D'Ambrosio* opinion cannot be characterized as inviting the legislature to create a new cause of action in tort if existing sanctions created under the Unfair Insurance Practices Act are inadequate. At the most, the invitation was to create a private cause of action based on the unfair practices enumerated within the Act rather than to create a new tort.

In *Ihnat v. Pover,* 146 P.L.J. 288, 291-98 (1998), I addressed the issue of whether a section 1983 claim may be raised against an insurance company based on fraudulent representations that induced existing policyholders to fund new policies with the policy reserves of their existing policies. I initially addressed the insurance company's argument that when the legislature used the term "bad faith" in an insurance context, it was referring only to the bad faith denial of coverage. I rejected this argument stating that section 8371 created a private cause of action based on violations of those insurance practices which constitute unfair methods of competition or unfair and deceptive acts or practices under the Unfair Insurance Practices Act. My opinion cited the statement within *Romano v. Nationwide Mutual Fire Insurance Co.,* 435 Pa. Super. 545, 554, 646 A.2d 1228, 1233 (1994), that the parameters of section 8371 may be discerned by reference to conduct within the reach of the Unfair Insurance Practices Act.

I agree with the *Nelson* opinion's conclusion that section 8371 should be governed by the two-year limitation period governing torts if the Unfair Insurance Practices Act reaches only conduct that would constitute tortious behavior. On the other hand, if this Act also reaches conduct which should be characterized as violations of statutorily created obligations, the two-year

limitation period should not apply. In other words, the controlling issue is whether the Unfair Insurance Practices Act creates new obligations that the insurer owes the insured or whether it only provides additional remedies for bad faith breaches of obligations created by the insurance agreement.

Numerous unfair practices which the Act describes arise out of new statutorily created obligations. Consider the following Acts within 40 P.S. §1171.5(10):[3] (ii) failing to acknowledge and act promptly upon written or oral communications with respect to claims arising under insurance policies; (iii) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; (iv) refusing to pay claims without conducting a reasonable investigation based on all available information; (v) failing to affirm or deny coverage of claims within a reasonable time; (vi) not attempting in good faith to promptly, fairly and equitably settle claims in which the company's liability has become reasonably clear; (vii) compelling persons to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts due and ultimately recovered; (x) making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which the payments are being made; and (xii) delaying the investigation or payment of claims by requiring the insured, claimant or physician to submit unnecessary proofs of loss forms. A bad faith action for violations of these provisions is based on the breach of new obligations. It does not involve de-

---

3. Subsection 1171.5(10) provides that any of its enumerated Acts, if committed or performed with such frequency as to indicate a business practice, shall constitute unfair claim settlement or compromise practices.

partures from a standard of care that tort law has traditionally recognized or the bad faith breach of a contract.

In *Gabriel v. O'Hara,* 368 Pa. Super. 383, 534 A.2d 488 (1987), purchasers of residential property discovered substantial defects shortly after taking possession of the property on August 29, 1980. On August 25, 1982, they filed a complaint raising causes of action for breach of the implied warranty of merchantability, breach of contract, and fraudulent misrepresentation.

On July 28, 1986, the plaintiffs filed a petition for leave to amend their complaint to include a claim for violations of the Unfair Trade Practices and Consumer Protection Law, Act of December 17, 1968, P.L. 1224, as amended, 73 P.S. §§201-1—201-9.2. The lower court denied the motion on the ground that a cause of action under the Consumer Protection Law is governed by Pennsylvania's two-year limitations period for fraud rather than the "catchall" six-year limitation period. The lower court reasoned that claims under the Consumer Protection Law essentially involve misconduct constituting fraud or deceit; thus, actions based on this Act will be governed by the two-year limitation period for actions for fraud and deceit.

The Superior Court stated that the controlling issue is not whether a particular claim sounds in tort but instead whether each claim that may be brought under the Consumer Protection Law resembles a claim for fraud and deceit. A uniform statute of limitations for the Consumer Protection Law is required to preclude uncertainty and inconsistency. Consequently, claims under the law must fall within the six-year catchall limitation unless the entire array of practices characterized as unfair trade practices comes within the two-year limitation period.

The court stated that unfair trade practices which the Consumer Protection Law describes include what might be analogized to misappropriation, trademark infringement, disparagement, false advertisement, fraud, breach of contract, and breach of warranty. Thus, causes of action based on the Consumer Protection Law are governed by a six-year limitation period:

"We are unable, therefore, to characterize all the multifarious claims that may be brought under the [Consumer Protection Law] as 'fraud' or 'deceit.' Instead, the [Consumer Protection Law] creates a civil action which is separate and distinct from appellants' other causes of action and for which the legislature provided no limitations period. The language of section 5527(6) of the Judicial Code, however, is clear and unambiguous as to what period of limitation shall apply in such instances." *Id.* at 396, 534 A.2d at 495. (footnote omitted)

Claims under section 8371 based on the unfair practices described in the Unfair Insurance Practices Act are very similar to claims based on the Consumer Protection Law. In both instances, recovery may be based on statutorily created duties that have almost no relationship to common-law fraud. In both instances, remedies for a breach include the award of counsel fees and punitive damages.[4]

CIGNA seeks to distinguish *Gabriel v. O'Hara* on the ground that recovery under section 8371 includes

---

4. In *Nelson, supra,* 988 F. Supp. at 534 n.11, the court stated that it is hard to conceive that the Pennsylvania General Assembly would have intended to provide a six-year limitations period for a bad faith claim under section 8371 even assuming that a section 8371 action sounds both in tort (with a two-year limitations period) and contract (with a four-year limitations period). However, *Gabriel* holds that the six-year limitation period applies whenever more than one limitation period would be involved.

an additional requirement of self-interest or ill will. However, this additional requirement does not necessarily involve tortious misconduct. It simply eliminates inadvertent or careless misconduct. This means, for example, that a bad faith claim based on the failure to act promptly upon written or oral communications with respect to claims arising under the insurance policy requires a showing that failure to act promptly is the result of a business practice rather than a failure to act in a particular case because of oversight, incompetence, or other careless acts. See *Woody v. State Farm Fire and Casualty Co., supra.*

For these reasons, I enter the following order of court:

## ORDER

On November 16, 1998, it is hereby ordered that plaintiff's motion for leave to amend complaint is granted.