# Trujillo v. State Farm Mutual Automobile Insurance Co.

*Scott R. Shepherd,* for plaintiff.

*James T. Moughan,* for defendant.

HERRON, *J.,* December 6, 2001—Defendant State Farm Mutual Automobile Insurance Co. has filed preliminary objections to the amended complaint of plaintiff Louis Trujillo. For the reasons set forth in this opinion, the court is issuing a contemporaneous order sustaining the objections in part and overruling the objections in part.

## BACKGROUND

This action revolves around State Farm's standard automobile insurance policy, which includes the following "Compensation provision:"

"In addition to the limits of liability, we will pay for an insured any costs listed below resulting from such accident: . . .

"(4) Expenses incurred by an insured:

"(a) For losses of wages of salary up to $35 per day, if we ask the insured to attend the trial of a civil suit. . . .

"(c) At our request." Complaint at ¶10-11.

On August 21, 1993, the plaintiff, the insured under a policy issued by State Farm, was involved in an accident. When the plaintiff was sued as a result of the accident, he promptly informed State Farm, which confirmed that it was providing a defense and that it had hired counsel for him. State Farm required the plaintiff to appear at a deposition to testify about the accident on January 31, 1996, and to attend and to testify at trial on October 7, 1996.

As a result of the deposition and the trial, the plaintiff missed work, lost wages and incurred routine expenses. Although it was aware of the plaintiff's right to reimbursement under the compensation provision, State Farm never informed the plaintiff of his right to compensation from State Farm, never provided him with a method by which he could obtain compensation and never paid him for his loss of earnings or other expenses. Indeed, plaintiff never asked for such compensation.

According to the complaint, the plaintiff's experience is merely an illustration of how State Farm's compensation scheme fails to fulfill its obligations under the policy. It is alleged that State Farm trains its agents not to inform policyholders of their right to reimbursement and has never established a mechanism to reimburse policyholders or instituted a form by which an insured can request reimbursement. On the basis of these allegations, the plaintiff has initiated the instant class action for a declaratory judgment, breach of contract, breach of the contractual duty of good faith and fair dealing, insurance bad faith[1] and unjust enrichment. In response, State Farm has filed the objections, which assert that portions of the complaint are legally insufficient, insufficiently specific and scandalous and impertinent, and that the plaintiff's claims are barred by the statute of limitations.

## DISCUSSION

State Farm contends that the plaintiff's claims are barred by the statute of limitations. The plaintiff counters

---

1. This claim is brought pursuant to 42 Pa.C.S. §8371.

that the statute of limitations cannot be raised in preliminary objections and that the "discovery rule" precludes application of the statute of limitations in this action. State Farm, in turn, responds that the plaintiff's failure to file preliminary objections to the objections opens an exception to the general pleading rules and permits the court to consider its statute of limitation argument in the instant context.

Although there is no binding Pennsylvania authority on the subject, the court believes that bad faith claims like the plaintiff's are subject to Pennsylvania's six-year "catchall" statute of limitations and that the plaintiff's claim, therefore, is not barred. The plaintiff's contract-related claims, however, cannot survive the objections: because State Farm highlights a legitimate exception to standard Pennsylvania practice and because the plaintiff has failed to show why this statute of limitations should be tolled, the plaintiff's contract-related claims are barred by the statute of limitations, requiring the dismissal of the instant action. As to the remaining objections, four paragraphs of the plaintiff's request for relief are improper and must be stricken, and the inference of prejudice to State Farm requires that the scandalous and impertinent portion of the complaint be stricken.

I. *Although the Plaintiff May Proceed on His Bad Faith Claim, the Plaintiff's Contract-Related Claims Are Barred by the Statute of Limitations*

An examination of Pennsylvania law reveals no binding precedent as to which statute of limitations applies to Pennsylvania bad faith claims, and the existing case

law is split as to whether a two-year or six-year statute of limitations applies. Because the decisions of those courts holding that the six-year "catchall" statute of limitations applies are more persuasive, the plaintiff may proceed on his bad faith claim. The plaintiff's contract-related claims, however, are barred because the four-year statute of limitations applies to them and they did not accrue within the past four years.

## A. Generally, a Court May Consider Preliminary Objections Raising the Statute of Limitations If No Preliminary Objections Thereto Are Filed

As an initial matter, the court may examine State Farm's statute of limitations argument. The plaintiff correctly points out that "[t]he defense of the bar of . . . a statute of limitations can be asserted only in a responsive pleading as a new matter under Rule 1030." Pa.R.C.P. 1028(a)(4) note. See also, *Koken by Taylor v. Balaban and Balaban,* 720 A.2d 823, 826 (Pa. Commw. 1998) (striking defense of statute of limitations where it was improperly pled in preliminary objections); *Ferrari v. Antonacci,* 456 Pa. Super. 54, 57, 689 A.2d 320, 322 (1997) ("a statute of limitation defense is to be raised in new matter rather than by preliminary objections"). However, the proper way to contest the inclusion of a statute of limitations argument in preliminary objections is to file preliminary objections to the preliminary objections:

"Where a party erroneously asserts substantive defenses in preliminary objections rather than . . . raise these defenses by answer or in new matter, the failure of the opposing party to file preliminary objections to the

defective preliminary objections, raising the erroneous defenses, waives the procedural defect and allows the trial court to rule on the preliminary objections." *Preiser v. Rosenzweig,* 418 Pa. Super. 341, 345-46, 614 A.2d 303, 305 (1992), *aff'd,* 538 Pa. 139, 646 A.2d 1166 (1994) (citing *Duquesne Slag Products v. Lench,* 490 Pa. 102, 415 A.2d 53 (1980), and *Button v. Button,* 378 Pa. Super. 142, 548 A.2d 316 (1988)). Cf. *4701 Concord L.L.C. v. Fidelity Nat'l Title Ins. Co. of N.Y.,* April term, 2001 no. 1481, slip op. at 4-5 (C.P. Phila. Aug. 28, 2001) (Herron, J.) (discussing the obligation to file preliminary objections to ensure that flaws in defective preliminary objections will be considered).[2]

As a result, Pennsylvania law compels the court to consider State Farm's statute of limitations argument and the plaintiff's responses thereto.

### B. Because a Six-Year Statute of Limitations Applies to Bad Faith Claims, the Plaintiff's Bad Faith Claims Are Not Barred

Pennsylvania has a two-year statute of limitations for actions arising in tort,[3] a four-year statute of limitations

---

2. Available at http://courts.phila.gov/cptcvcomp.htm.

3. Pennsylvania's two-year statute of limitations applies generally to torts and specifically to "[a]ny . . . action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter." 42 Pa.C.S. §5524(7).

for actions arising in contract[4] and a six-year "catchall" statute of limitation.[5] Relying on *Nelson v. State Farm Auto. Ins. Co.,* 988 F. Supp. 527, 530 (E.D. Pa. 1997),[6] State Farm asserts that the plaintiff's insurance bad faith claim sounds in tort and is subject to a two-year statute of limitations. This categorization, however, is far from certain, as no Pennsylvania appellate court has addressed the issue:

"As the trial court and the parties recognize, courts applying Pennsylvania law have differed on the question of which statute of limitations applies to a bad faith action under section 8371. See *e.g., Nelson v. State Farm Mutual Automobile Insurance Co.,* 988 F. Supp. 527 (E.D. Pa. 1997) (applying a two-year statute of limitations applicable to tort actions under 42 Pa.C.S. §5524); *Woody v. State Farm Fire and Casualty Co.,* 965 F. Supp. 691 (E.D. Pa. 1997) (applying the six-year 'catchall' statute of limitations under 42 Pa.C.S. §5527); *Susich v.*

---

4. Pennsylvania's four-year statute of limitations applies generally to contracts and specifically to "[a]n action upon a contract, obligation or liability founded upon a writing not specified in paragraph (7), under seal or otherwise, except an action subject to another limitation specified in this subchapter." 42 Pa.C.S. §5525(8).

5. Under Pennsylvania law, "[a]ny civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years." 42 Pa.C.S. §5527.

6. While *Nelson* discusses the relevant issues in the greatest depth and is therefore the most useful in addressing the issue at hand, several other decisions reach the same conclusion as that reached in *Nelson.* See *e.g., Lochbaum v. United States Fidelity & Guar. Co.,* 136 F. Supp.2d 386 (W.D. Pa. 2000).

*Prudential Property and Casualty Insurance Co.,* 52 Beaver L.J. 168, 1998 WL 663286 (1998) (two-year statute of limitations); and *Mantia v. Northern Insurance Co. of New York,* 76 Lanc. L.Rev. 250, 1998 WL 1108814 (1998) (six-year statute of limitations). Nonetheless, having determined that an action under 8371 is not available to appellants, we must wait for an appropriate case to resolve the question of which limitations period applies to the statute." *Adamski v. Allstate Insurance Co.,* 738 A.2d 1033, 1039 n.6 (Pa. Super. 1999).

Because no case law binds the court to either a two-year or a six-year statute of limitations for bad faith actions,[7] the court will examine the conflicting decisions and weigh the reasoning for each approach.

A review of the Pennsylvania cases holding that a bad faith action sounds in tort and is subject to a two-year statute of limitations shows that such cases rely primarily on three arguments: the history of bad faith as a Pennsylvania cause of action reveals that the action is a "new tort;" the majority of other United States jurisdictions have found that a bad faith action sounds in tort; and a bad faith action is more tort-like than contract-like in nature.[8] While each of these arguments has merit, the

---

7. Research reveals no case holding that the four-year contract statute of limitations applies to bad faith claims.

8. The court in *Susich* presented the additional argument that a bad faith claim was an action for a civil penalty, requiring the application of the two-year statute of limitations. A closer examination reveals that an action for civil penalty is distinct from a bad faith action because the former involves a governmental entity, while the latter provides for private compensation. See Black's Law Dictionary 647, 1154 (7th ed. 1999) (defining a "civil penalty" as "[a] fine assessed for a

court respectfully finds the counterarguments to be more persuasive.

### 1. *The history of bad faith claims in Pennsylvania does not reveal an intention to create a "new tort"*

In examining the history of bad faith claims in Pennsylvania, all cases turn to *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 494 Pa. 501, 431 A.2d 966 (1981). In *D'Ambrosio,* the plaintiff brought two claims against his insurer, the first in assumpsit for the costs of repairing his damaged boat, and the second in trespass for compensatory and punitive damages. The plaintiff urged the court to adopt the position taken in *Gruenberg v. Aetna Insurance Co.,* 9 Cal.3d 566, 108 Cal. Rptr. 480, 510 P.2d 1032 (1973), in which the California Supreme Court held that an insurer's failure to deal fairly and in good faith with its insured could give rise to "a cause of action in tort for breach of an implied covenant of good faith and fair dealing." 9 Cal.3d at 574, 108 Cal. Rptr. at 485, 510 P.2d at 1037. This, the plaintiff argued, was "the only remedy which will prevent insurance industry abuse in hand[l]ing first-party claims, and which will place the consumer on more equal

---

violation of a statute or regulation," and defining a fine, in turn, as "payable to the public treasury"); Black's Law Dictionary (6th ed. 1990) (defining "fine" as "a pecuniary punishment or penalty imposed upon a person convicted of a crime or misdemeanor"). Cf. *Northview Motors Inc. v. Chrysler Motors Corp.,* 227 F.3d 78, 90 (3d Cir. 2000) ("section 5524(5) is not applicable to the [Pennsylvania Board of Vehicles Act] because the statute is not penal and instead is remedial"). Thus, a cause of action for an insurer's bad faith is not subject to the two-year statute of limitations for this reason.

footing with insurers." 494 Pa. at 505, 431 A.2d at 969. (quotation marks and footnote omitted)

The Pennsylvania Supreme Court ultimately rejected the plaintiff's position. Turning to Pennsylvania's Unfair Insurance Practices Act,[9] the court pointed out that the insurance commissioner of Pennsylvania was empowered to investigate 15 types of unfair or deceptive conduct and could impose such sanctions as a cease and desist order, license suspension or revocation or a civil penalty of up to $5,000 per violation. This, the court held, showed that the Pennsylvania Legislature had "already made dramatic, sweeping efforts to curb the bad faith conduct." 494 Pa. at 505, 431 A.2d at 969. Moreover, the court reasoned, there was no evidence to suggest that the creation of a bad faith cause of action was the province of the judiciary, even if the recognition of such a cause of action were warranted. 494 Pa. at 507-508, 431 A.2d at 970. According to *Nelson*, "the Pennsylvania General Assembly finally accepted *D'Ambrosio's* invitation and enacted 42 Pa.C.S. §8371 to create a statutory remedy for bad faith conduct in the handling of insurance policies." 988 F. Supp. at 532.

Completely absent from the discussion in *D'Ambrosio* is any consideration of whether a bad faith cause of action would sound in tort, in contract, in both or in neither. In the court's own words, the "issue on this appeal is whether, in light of the Unfair Insurance Practices Act, this court should permit an action seeking . . . damages for 'emotional distress' and punitive damages because of the insurer's alleged 'bad faith' conduct in denying

---

9. 40 Pa.C.S. §§1171.1-1171.15 (UIPA).

the insured's claim." 494 Pa. at 502-503, 431 A.2d at 967. In reaching its decision, the court held that "it is . . . for the legislature to determine whether sanctions beyond those created under the Act are required to deter conduct which is less than scrupulous." 494 Pa. at 508, 431 A.2d at 970. There is no indication that such "sanctions" would necessarily sound in tort. See *Mantia v. Northern Insurance Co. of New York,* 39 D.&C.4th 71, 77 (Lancaster Cty. 1998) ("[t]he 'tort vs. contract' question was not before the Supreme Court of Pennsylvania, and the court did not, as *Nelson* infers, hold that if an action for insurer bad faith did exist, that action would have to be a tort").

*Nelson* also points out that the three cases cited by the *D'Ambrosio* court as recognizing a common-law bad faith cause of action held that the action sounded in tort.[10] This assertion is correct. What is interesting about this statement, however, is that the word "tort" is used only in discussing these cases and the related commentary. Nowhere is "tort" mentioned when discussing past, present or future actions of any Pennsylvania authority or entity. This can be read to imply that, while other states considered a bad faith action as arising in tort, no such determination had been made in Pennsylvania. Thus, the court must agree that, "[a]t the most, the invitation was to create a private cause of action based on the unfair practices enumerated within the Act rather than to create a new tort." *Hospital Shared Services v. CIGNA Insurance*

---

10. These cases are *Gruenberg, Bibeault v. Hanover Insurance Co.,* 417 A.2d 313 (R.I. 1980) and *Anderson v. Continental Insurance Co.,* 271 N.W.2d 368 (Wis. 1978).

*Co.,* 41 D.&C.4th 148, 153 (Allegheny Cty. 1998). See also, *Greater New York Ins. Co. v. North River Ins. Co.,* 872 F. Supp. 1403, 1408 (E.D. Pa. 1995) (citing *D'Ambrosio* for the proposition that, "[i]n Pennsylvania, breach of a duty of good faith pertaining to an insurance policy sounds in contract, not in tort").

To tie *D'Ambrosio* to section 8371 and Pennsylvania's current bad faith cause of action, *Nelson* contends that "the passage of section 8371 was indeed in direct response to the *D'Ambrosio* opinion." See *Nelson,* 988 F. Supp. at 532. Again, such arguments are correct. See *e.g, Polselli v. Nationwide Mut. Fire Ins. Co.,* 23 F.3d 747, 750 (3d Cir. 1994) ("[i]n *D'Ambrosio* . . . the Supreme Court of Pennsylvania held that there is no common-law remedy under Pennsylvania law for bad faith on the part of insurers. In response, the Pennsylvania Legislature enacted 42 Pa.C.S. §8371 which creates a statutory remedy for bad faith conduct"); *Lombardo v. State Farm Mut. Auto. Ins. Co.,* 800 F. Supp. 208, 213 (E.D. Pa. 1992) ("[t]he legislature responded to the *[D'Ambrosio]* court's suggestion by enacting 42 Pa.C.S. §8371"); Christopher Hasson, *The 1990 Pennsylvania Auto Insurance Law: An Analysis of "Bad Faith" and the "Limited Tort Option,"* 29 Duq. L. Rev. 619, 630-31 (1991). However, this conclusion is of no import:

"[I]t does not follow that the legislature, in enacting the statute nearly 10 years later, intended to create a 'new tort' as the California courts had done simply because *Gruenberg* was discussed in *D'Ambrosio.* The Pennsylvania Supreme Court cited the California decision in *Gruenberg* because Mr. D'Ambrosio argued that the Supreme Court should adopt the position of the Supreme

Court of California in *Gruenberg*. Moreover, the Supreme Court stated its decision in *D'Ambrosio* in terms of 'tort' law because the plaintiff had styled his claim as an action in tort." *Mantia*, 39 D.&C.4th at 78.

Moreover, there is no indication in the legislative history of section 8371 that the statute creates an action in tort. Thus, while the enactment of section 8371 may have been a response to *D'Ambrosio*, there is no indication whatsoever either that the *D'Ambrosio* court considered a bad faith action to sound in tort or that the Pennsylvania General Assembly believed it was creating a "new tort."

*2. Case law from other jurisdictions does not require a holding that a claim for bad faith sounds in tort*

The argument that case law from other jurisdictions requires a finding that bad faith claims sound in tort is equally unconvincing. Although the statistics hint that recognition of bad faith claims as torts is the undeniably dominant position, an exploration of the underlying cases reveals more subtle distinctions that are not susceptible to sweeping generalizations.

The *Nelson* court stated that "at least 29 states seem to recognize the bad faith breach of a first-party insurance contract as a common-law tort." 988 F. Supp. at 533 (citing Douglas R. Richmond, *The Two-Way Street of Insurance Good Faith: Under Construction, But Not Yet Open*, 28 Loy. U. Chi. L.J. 95, 107 n.74 (1996)).[11] The court

---

11. Researchers have found it "nearly impossible to state with certainty whether many states have accepted the first-party bad faith action." Randy Papetti, *The Insurer's Duty of Good Faith in the Context*

relied on "this lopsided balance of state authority" to support its conclusion that Pennsylvania's cause of action for bad faith sounded in tort. 988 F. Supp. at 534.

While these statistics may appear impressive, they are not persuasive. As an initial matter, in most of these jurisdictions, a bad faith cause of action was held to be a common-law tort. In contrast, the *D'Ambrosio* court specifically *rejected* the argument that bad faith claims arose in common law in Pennsylvania, and an insured's right to pursue claims against an insurer for bad faith was created by statute. This difference in manner of adoption

---

*of Litigation,* 60 Geo. Wash. L. Rev. 1931, 1979 (1992). Stating that "a number of jurisdictions apparently recognize first-party bad faith as an independent tort," *Nelson* cites the decisions of 24 state supreme courts and five lower state courts. At least two of these decisions appear to be no longer in good standing. See *Venn v. St. Paul Fire and Marine Ins. Co.,* 99 F.3d 1058, 1065 (11th Cir. 1996) (interpreting Florida law to hold that "[t]he duty of good faith described by the court is a contractual duty and its breach gives rise to an action 'ex contractu rather than in tort' "); *Tackett v. State Farm First & Cas. Ins. Co.,* 653 A.2d 254, 264 (Del. 1995) (implicitly overruling *Casson v. Nationwide Ins. Co.,* 455 A.2d 361, 368 (Del. Super. Ct. 1982), by holding that an action for insurance bad faith is based in contract). Other decisions listed may also be of questionable value. See *e.g., Gulf Ins. Co. v. TIG Ins. Co.,* 103 Cal.Rptr.2d 305, 310 (Cal. Ct. App. 2001) ("[c]laims for bad faith violation of an insurance contract are 'strictly tied' to an implied covenant of good faith and fair dealing, which arises out of an underlying contractual relationship"); *Stahl v. Preston Mut. Ins. Ass'n,* 517 N.W.2d 201, 204 (Iowa 1994) (plaintiff's cause of action for bad faith was "a claim on the policy"). At the same time, it appears that at least two other jurisdictions have joined the ranks of those bad faith claims as torts. *Safeco Ins. Co. of America v. Butler,* 823 P.2d 499, 503 (Wash. 1992) ("[a]n action for bad faith handling of an insurance claim sounds in tort); *Wilt v. State Auto. Mut. Ins. Co.,* 506 S.E.2d 608 (W. Va. 1998) (treating unfair settlement practices claim as arising in tort, not contract).

distinguishes Pennsylvania from those jurisdictions where bad faith claims are regarded as torts.

To the extent that such decisions are sufficiently similar to the issues faced here, it is worth noting the substantial number of jurisdictions that have *not* taken a tort approach or applied a tort statute of limitations to bad faith claims. Courts in Delaware, Florida, Louisiana, New Jersey, New York and Utah, for example, have held that a bad faith cause of action is inherently contractual in nature.[12] At least one jurisdiction has found that bad faith claims sound in both tort and contract,[13] while still oth-

---

12. See *Venn v. St. Paul Fire and Marine Ins. Co.,* 99 F.3d 1058, 1065 (11th Cir. 1996) (citing *Government Employees Ins. Co. v. Grounds,* 332 So.2d 13, 14 (Fla. 1976), to find that "[t]he duty of good faith described by the court is a contractual duty and its breach gives rise to an action 'ex contractu rather than in tort' "); *Tackett v. State Farm Fire & Cas. Ins. Co.,* 653 A.2d 254, 264 (Del. 1995) (adopting "the contractual basis for a bad faith action against an insurer"); *We Sell Used Cars Inc. v. United Nat. Ins. Co.,* 715 So.2d 656 (La. Ct. App. 1998) (applying 10-year contract liberative prescription to bad faith claim); *Pickett v. Lloyds,* 621 A.2d 445, 452 (N.J. 1993) (a bad faith claim "is best understood as one that sounds in contract"); *Fleming v. Allstate Ins. Co.,* 482 N.Y.S.2d 519 (N.Y. App. Div. 1984) (treating insurer bad faith claim as a breach of contract); *Beck v. Farmers Ins. Exch.,* 701 P.2d 795, 799 (Utah 1985) (concluding that the tort approach for bad faith claims "is without a sound theoretical foundation" because "the contract itself creates a fiduciary relationship because of the trust and reliance placed in the insurer by its insured"). *Pickett* is particularly interesting because in that the New Jersey Supreme Court's decision contradicted the result reached by the New Jersey federal court in *DiSalvatore v. Aetna Casualty & Surety Co.,* 624 F. Supp. 541 (D.N.J. 1986), where the court held that a bad faith claim sounded in tort.

13. *Dailey v. Integon Gen. Ins. Co.,* 331 S.E.2d 148, 153 (N.C. 1985) ("under some circumstances our law permits the recovery of punitive damages on claims for a tortious, bad faith refusal to settle

ers do not recognize bad faith causes of action in any form.[14] Pennsylvania falls into a fifth category of states that do not recognize common-law bad faith claims but have enacted statutory schemes to allow for such a cause of action. See also, *Mohr v. Dix Mut. County Fire Ins. Co.*, 493 N.E.2d 638 (Ill. App. Ct. 1986) (relying on 215 Ill.C.S. §5/155); *Duncan v. Andrew County Mut. Ins. Co.*, 665 S.W.2d 13 (Mo. Ct. App. 1983) (relying on Mo. Stat. §375.420); *Leonard v. Firemen's Ins. Co. of Newark, N.J.*, 111 S.E.2d 773 (Ga. Ct. App. 1959) (relying on Ga. Code §33-4-6).[15] This reveals that the categorization of bad faith claims is not monolithically tort-oriented but rather is diverse and does not uniformly support any particular approach.

Even those states whose law holds that a bad faith claim sounds in tort have not, for the most part, addressed the question of whether the tort or contract statute of limitations applies to such a claim. When courts have focused

---

under an insurance policy, even though, as in this instance, the refusal to settle is also a breach of contract").

14. See *e.g., Washington v. Government Employees Ins. Co.*, 769 F. Supp. 383, 386-87 (D.D.C. 1991); *Taylor v. Blue Cross/Blue Shield of Mich.*, 517 N.W.2d 864, 870 (Mich. Ct. App. 1995); *Marquis v. Farm Family Mut. Ins. Co.*, 628 A.2d 644, 652 (Me. 1993); *Johnson v. Federal Kemper Ins. Co.*, 74 243, 536 A.2d 1211 (Md. Ct. Spec. App. 1988).

15. Many of those states like Pennsylvania that have statutory bases for bad faith claims have found that the resultant claims are contractual, not tort-based. See *e.g., Tate v. Aetna Cas. & Sur. Co.*, 253 S.E.2d 775 (Ga. Ct. App. 1979) (bad faith claim brought pursuant to Georgia statute sounded in contract, not tort); *Garcia v. Lovellette*, 639 N.E.2d 935, 937 (Ill. App. Ct. 1994) ("[t]he insurer's duty to deal fairly with the insured arises out of the contractual relationship").

on this question, some have reconsidered their classification of bad faith claims and found that the contract statute of limitations applied to this "tort." In Delaware, for example, the Superior Court originally recognized bad faith claims as a tort, stating that "an insurer's bad faith refusal to make payments due under a contract of insurance, breaches an implied duty to deal fairly and in good faith with an insured and creates an independent cause of action in tort for mental suffering." *Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 368-69 (Del. Super. Ct. 1982). Thirteen years later, however, the Delaware Supreme Court considered "whether a first-party claim against an insurer for bad faith denial or delay in claim payment sounds in tort or in contract" and concluded that a bad faith action had a contractual basis. *Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254, 264 (Del. 1995). Delaware's clarification of the nature of a bad faith claim in that state indicates that the treatment of bad faith claims as torts in other states may not be as solid as *Nelson* would have us believe.

Moreover, many of those states adopting a tort approach to bad faith claims have acknowledged, as the *Nelson* court did, the link between a bad faith claim and contract. See *e.g., Rowland v. Great States Ins. Co.*, 20 P.3d 1158, 1163 (Ariz. Ct. App. 2001) (noting that "a contractual nexus is required" for a successful bad faith claim); *Davidson v. American Freightways Inc.*, 25 S.W.3d 94, 100 (Ky. 2000) ("[a]bsent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute"); *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996) ("an insured may not prevail on a bad faith claim without first

showing that the insurer breached the contract").[16] This concession lends credence to the belief that the numbers analysis in *Nelson* does not have the obvious winner that the raw data would have us believe. For these reasons, the law of other jurisdictions does not require the court to apply the two-year tort statute of limitations in the instant action.

### 3. *The nature of a bad faith cause of action does not sound exclusively in tort law*

The third argument used by the Pennsylvania courts holding that the two-year statute of limitations should apply to bad faith claims is that the nature of bad faith claims is more tort-like than contract-like. In *Nelson,* for example, the court acknowledged that an insurer's duty of good faith was contractual in nature but went on to note that a bad faith claim's emphasis on the reasonableness of the insurer's behavior was akin to a tort claim:

"Such an inquiry into the reasonableness of the insurer's *behavior,* to see whether it is perhaps more than mere negligence or bad judgment, bears the classic earmarks of the law of torts. In describing these emblems of

---

16. This would help explain the seemingly incongruous statements like that of the Colorado Court of Appeals that "[i]n every insurance contract there is an implied covenant of good faith and fair dealing. Accordingly, when the insurer unreasonably and in bad faith withholds payment of claims of its insured, it is subject to liability in tort." *Brennan v. Farmers Alliance Mut. Ins. Co.,* 961 P.2d 550, 556 (Colo. Ct. App. 1998). See also, *Thiele v. State Farm Mut. Auto. Ins. Co.,* 973 F. Supp. 1091, 1093 (N.D. Ind. 1997) (a bad faith claim "is one in tort, but it is rooted in the special contractual relationship that exists between an insured and insurer").

tort, Prosser states that while a tort is difficult to define or to describe with a single guiding principle,

"So far as there is one central idea, it would seem that it is that liability must be based upon conduct which is socially unreasonable. The common thread woven into all torts is the idea of unreasonable interference with the interests of others. In many cases, of course, what is socially unreasonable will depend upon what is unreasonable from the point of view of the individual. The tort-feasor usually is held liable for acting with an intention that the law treats as unjustified, or acting in a way that departs from a reasonable standard of care. . . .

"Thus, torts concerns itself with standards of conduct that society imposes. Contracts concerns itself with promises the parties themselves make and exchange. Bad faith is more akin to the former than to the latter because it is precisely such an exogenous standard." 988 F. Supp. at 533. (citations omitted)

*Nelson* also noted that punitive damages are not available in Pennsylvania breach of contract actions and that the availability of such damages for a bad faith claim suggests a tort-like nature. 988 F. Supp. at 529 (citing *AM/PM Franchise Association v. Atlantic Richfield,* 526 Pa. 110, 584 A.2d 915 (1990), and *Thorsen v. Iron and Glass Bank,* 328 Pa. Super. 135, 476 A.2d 928 (1984)).

Although *Nelson* accurately highlights the ways in which a bad faith claim resembles a tort claim, it does not highlight the similarities between bad faith claims and contract claims. Several Pennsylvania state and federal courts have noted the contractual nature of an insurer's duty of good faith. See *e.g., Romano v. Nation-*

*wide Mut. Fire Ins. Co.,* 435 Pa. Super. 545, 550-51, 646 A.2d 1228, 1231 (1994) (because the "heightened duty" an insurer owes to an insured "is necessary because of the special relationship between an insurer and its insured and the very nature of the insurance contract. The insurer's duty of good faith . . . is contractual . . .").[17] It is this contractual duty, among others, that is breached by an insurer when it acts in bad faith towards its insured. *Id.,* 435 Pa. Super. at 553, 646 A.2d at 1232 ("bad faith" in an insurance context means "a breach of a known duty (*i.e.,* good faith and fair dealing) . . .").

This conclusion is bolstered by an examination of the UIPA, violations of which may be considered when determining whether an insurer has acted in bad faith. See *Romano,* 435 Pa. Super. at 555, 646 A.2d at 1233 ("when evaluating a section 8371 petition or motion for costs and/or counsel fees for the 'bad faith' of an insurer, may look to: . . . other statutes upon the same or similar subjects (like the UIPA in this case) . . ."). Among those acts prohibited by the UIPA is "[f]ailing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage or under other policies of insurance." 40 Pa.C.S. §1171.5(a)(10)(xiii). This provision has been interpreted as sounding in contract under the duty of good faith and fair dealing. See *Woody v. State*

---

17. Even cases that treat bad faith claims as torts recognize that a bad faith action "is factually linked to the underlying contractual duty of good faith and fair dealing upon which the insured can sue the insurer for breach of contract." *Nelson,* 988 F. Supp. at 533.

*Farm Fire and Casualty Co.,* 965 F. Supp. 691, 694 (E.D. Pa. 1997).[18] This mandates the conclusion that a bad faith claim is *both* tort-like *and* contract-like in nature, and that the nature of any individual claim may depend on context and the insurer's conduct. See *Mantia,* 39 D.&C.4th at 85-86 (agreeing that "a bad faith claim can sound in either tort or contract" and that the term "bad faith" "encompasses actions by insureds that sound in both tort and contract").

*4. Because a bad faith claim sounds in both tort and contract, the six-year "catchall" statute of limitations applies, and the plaintiff's bad faith claim is not barred*

Having established the dual nature of a bad faith claim, it is necessary to determine which statute of limitations is appropriate for claims that sound in both tort and contract. A review of Pennsylvania law reveals that actions potentially subject to more than one statute of limitations are governed by the six-year "catchall" statute of limitations and that the plaintiff's bad faith claim is not barred.

---

18. In *Hospital Shared Services,* Judge R. Stanton Wettick Jr. held that the UIPA established obligations that were neither tort-like nor contract-like. Instead, Judge Wettick found that "[a] bad faith action for violations of [certain UIPA] provisions is based on the breach of new obligations. It does not involve departures from a standard of care that tort law has traditionally recognized or the bad faith breach of a contract." 41 D.&C.4th at 154-55. This holding supports the court's finding infra that the "catchall" statute of limitation applies to bad faith claims.

*Nelson* and its progeny are based on the supposition that a bad faith claim's tort-like qualities predominate and trump any resemblances to a contract action, requiring the application of the two-year statute of limitations. This court respectfully disagrees with this conclusion. Even if a bad faith cause of action is more tort-like than contract-like, we believe the appropriate response is not to employ a balancing test and to adopt the dominant action's statute of limitations. Instead, Pennsylvania courts have held that actions sounding in both contract and tort are governed by the "catchall" provision's six-year period.

This holding is illustrated in *Gabriel v. O'Hara,* 368 Pa. Super. 383, 534 A.2d 488 (1987). In *Gabriel,* the court considered what statute of limitations should apply to claims brought under Pennsylvania's Unfair Trade Practices and Consumer Protection Law[19] and found that such claims could sound in either tort or contract. On this basis, the court reasoned, the "catchall" six-year statute of limitations should apply:

"[T]he UTPCPL creates a civil action which is separate and distinct from appellants' other causes of action and for which the legislature provided no limitations period. The language of section 5527(6) of the Judicial Code, however, is clear and unambiguous as to what period of limitation shall apply in such instances: 'Any civil action or proceeding which is neither subject to another limitation specified in this subchapter *nor* excluded from the application of a period of limitation [must

---

19. 73 Pa.C.S. §§201-1—201-9.3.

be commenced within six years].' 42 Pa.C.S. §5527(6). (emphasis added) Since section 201-9.2 of the UTPCPL provides for a civil action which is not subject to a limitations period, the Unfair Trade Practices and Consumer Protection Law is subject to the six-year 'catchall' statute of limitations." 368 Pa. Super. at 396, 534 A.2d at 495. (emphasis in original) (footnote omitted) See also, *Hospital Shared Services,* 41 D.&C.4th at 156 n.4 ("*Gabriel* holds that the six-year limitation period applies whenever more than one limitation period would be involved").[20]

This reasoning is applicable to bad faith claims as well. As stated by Judge Anita B. Brody in *Woody:*

"Actions under section 8371 can sound in either tort or contract and each is governed by a different statute of limitations. As explained in *Gabriel,* a uniform statute of limitations under section 8371 is necessary to avert inconsistency among the courts and uncertainty among the potential parties to such a suit. *Id.* at 494. Therefore, consistent with the court in *Gabriel,* I conclude that the Pennsylvania legislature has provided no explicit limitations period for claims brought pursuant to 42 Pa.C.S. §8371. As section 5527 of the Judicial Code directs that actions not subject to any other statute of limitations are governed by a six-year limitations period, I conclude that the Supreme Court of Pennsylvania would most likely find that all actions brought pursuant to that statute are subject to the six-year 'catchall' statute of limitations." 965 F. Supp. at 695.

---

20. The *Nelson* court mentioned *Woody's* reliance on *Gabriel* but did not address it. 988 F. Supp. at 530 n.6.

Judge Lawrence F. Stengel echoed Judge Brody's thinking in *Mantia:*

"Because the bad faith statute is sui generis, it is neither tort nor contract but embodies elements of each. That is, one bad faith claim may involve fraudulent conduct and be very similar to a tort action. Another may involve the violation of the duty of good faith and fair dealing and sound in contract. Therefore, the 'catchall' statute of limitations should apply." 39 D.&C.4th at 86. (footnote omitted) See also, *Hospital Shared Services,* 41 D.&C.4th at 156 (noting that "[c]laims under section 8371 based on the unfair practices described in the Unfair Insurance Practices Act are very similar to claims based on the Consumer Protection Law").

For the reasons articulated by Judges Brody and Stengel, Pennsylvania bad faith claims are subject to the six-year "catchall" statute of limitations.[21]

---

21. In closing, the *Nelson* court suggests that applying a six-year statute of limitations to an action that has elements subject to both the two- and four-year statutes is unreasonable:

"It is hard to conceive that the Pennsylvania General Assembly could have intended to provide a six-year limitations period for a bad faith claim under section 8371 if the cause of action sounded in areas of the law with only two- and four-year limitations periods. Put another way, given the options of two *or* four years, it does not strike us as a reasonable reading to add the two periods together." 988 F. Supp. at 534 n.11.

This court must acknowledge the sensibility of this statement and the inconsistencies inherent in applying a six-year statute of limitations to bad faith claims. Unlike the *Nelson* court, however, we are bound by *Gabriel's* holding that a mixed tort-contract claim, whether a bad faith claim or a UTPCPL claim, is governed by the six-year statute of limitations. It is the responsibility of the Pennsylvania Gen-

The parties appear to agree that the plaintiff's bad faith cause of action accrued within the six years prior to the filing of this action. As such, the statute of limitation does not bar the plaintiff's bad faith claim, and the objections asserting otherwise are overruled.

### C. The Plaintiff's Contract-Related Claims Are Barred by the Statute of Limitations

Unlike his bad faith claim, the plaintiff's contract-based claims are governed by the four-year statute of limitations. Because these claims accrued more than four years ago and because the discovery rule does not apply, the plaintiff's contract-based claims are timed-barred and must be dismissed.

#### 1. *The discovery rule may apply to contract-related claims*

Under Pennsylvania's statute of limitations, actions for breach of contract, unjust enrichment and declaratory judgments are subject to a four-year limitation period. 42 Pa.C.S. §5525 (contract claims); *Cole v. Lawrence,* 701 A.2d 987 (Pa. Super. 1997) (quasi-contract claims); *Wagner v. Apollo Gas Co.,* 399 Pa. Super. 323, 582 A.2d 364 (1990) (declaratory judgment claims). Because the events giving rise to the plaintiff's action took place more than four years prior to the initiation of this action, State Farm asserts, the statute of limitations

---

eral Assembly to take further action to redress any problems arising from the application of the statute of limitations dictated by logic and the law.

bars the plaintiff from proceeding and requires the dismissal of the contract-related claims.

The plaintiff counters that the "discovery rule" allows him to continue his prosecution of this matter:

"Generally, once the prescribed statutory period has expired, the complaining party is barred from bringing suit. The 'discovery rule,' however, is an exception to that rule, and its application tolls the running of the statute of limitations. The 'discovery rule' provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible. . . . The 'discovery rule' arises from the inability of the injured party, despite the exercise of reasonable diligence, to know of the injury or its cause. . . . Its purpose is to exclude the period of time during which the injured party is reasonably unaware that an injury has been sustained so that people in that class have essentially the same rights as those who suffer an immediately ascertainable injury." *Hayward v. Medical Center of Beaver Cty.,* 530 Pa. 320, 325, 608 A.2d 1040, 1043 (1992). (citations omitted)

While a defendant's fraudulent conduct may allow the plaintiff to invoke the discovery rule, it is not necessary that the defendant's actions rise to the level of common-law fraud:

"Where, 'through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry,' the defendant is estopped from invoking the bar of the statute of limitations. . . . More-

over, defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient. . . . Mere mistake, misunderstanding or lack of knowledge is insufficient however, . . . and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party." *Molineux v. Reed,* 516 Pa. 398, 402-403, 532 A.2d 792, 794 (1987). (citations omitted) See also, *Cochran v. GAF Corp.,* 542 Pa. 210, 216, 666 A.2d 245, 249 (1995) ("one claiming the benefit of the [discovery rule] exception bears the burden of establishing that she falls within it"); *Pocono International Raceway Inc. v. Pocono Produce Inc.,* 503 Pa. 80, 85, 468 A.2d 468, 471 (1983) (a court applying the discovery rule must evaluate "the ability of the damaged party, exercising reasonable diligence, to ascertain the fact of a cause of action").

Citing only Justice Thomas Saylor's concurring and dissenting opinion in *Crouse v. Cyclops Industries,* 560 Pa. 394, 745 A.2d 606 (2000), State Farm asserts that the discovery rule cannot apply in contract cases. This, however, does not accurately reflect Justice Saylor's sentiments:

"I also question whether the discovery rule should apply to a claim based upon promissory estoppel. Although the discovery rule, which evolved in the tort context, has been applied by Pennsylvania courts in some discrete categories of cases involving contractual or quasi-contractual claims, see *e.g., Amodeo v. Ryan Homes Inc.,* 407 Pa. Super. 448, 453-54, 595 A.2d 1232, 1235 [(1991)] (stating that 'the discovery rule does apply to cases involving defective construction'), its use has not

been adopted on a wholesale basis in this area, and, notably, other jurisdictions are divided as to its applicability. Compare *Morris v. Fauver,* 153 N.J. 80, 707 A.2d 958, 972 (1998) ('the rationale for employing the discovery rule in tort- or fraud-type actions . . . does not carry over to most contract actions, and therefore, the discovery rule has not been applied in such suits'); *CLL Assoc. Ltd. v. Arrowhead Pacific Corp.,* 174 Wis.2d 604, 497 N.W.2d 115, 117 (1993) ('[i]n the context of general contract law, public policy favors the current rule that the contract statute of limitations begins to run at the time of breach'), with *Heron Financial Corp. v. United States Testing Co.,* 926 S.W.2d 329, 332 (Tex. App. 1996) ('a discovery rule analysis applies to both tort and contract actions alike')." 560 Pa. at 407 n.1, 745 A.2d at 613 n.1 (Saylor, J., concurring and dissenting).

The court finds State Farm's argument barring the application of the discovery rule to all contract claims unconvincing. First, while Justice Saylor's comments are relevant, he questions only whether the discovery rule *should* apply to contract claims, not whether it *does* apply to such claims. Moreover, in *Pocono International Raceway Inc.,* in which the Pennsylvania Supreme Court set forth the discovery rule in detail, the court stated that "[t]he salient point giving rise to the equitable application of the exception of the discovery rule is the inability, despite the exercise of diligence by the plaintiff, to know of the injury." 503 Pa. at 85, 468 A.2d at 471. Nowhere did the court give any indication that the rule's application would be limited to tort actions.

Since *Pocono International Raceway,* several Pennsylvania cases have applied the discovery rule to

contract-related claims without any hint of a substantive limitation. See *e.g., Crouse,* 560 Pa. at 407, 745 A.2d at 613 (remanding to trial court for determination as to whether application of the discovery rule allowed plaintiffs to proceed with their promissory estoppel claim); *Sadtler v. Jackson-Cross Co.,* 402 Pa. Super. 492, 500, 587 A.2d 727, 731 (1991) (discovery rule applied to claim arising from realtor's improper appraisal, which was contractual in nature, because the rule applied "where a party has been wronged by misleading information"). Accordingly, the court must conclude that the discovery rule may toll the statute of limitations in the types of contract-related claims raised by the plaintiff.

*2. Because the plaintiff's defense to State Farm's statute of limitations objections can be resolved as a matter of law, it may be addressed and rejected now*

Consideration of the plaintiff's discovery argument gives rise to a conflict. Application of the discovery rule generally raises questions of fact. *Kramer v. Dunn,* 749 A.2d 984, 988 (Pa. Super. 2000). Pennsylvania courts have expressed a clear preference that factual questions as to discovery be settled by a jury, when available and demanded. See *e.g., Crouse,* 560 Pa. at 404, 745 A.2d at 611 ("[p]ursuant to application of the discovery rule, the point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue 'best determined by the collective judgment, wisdom and experience of jurors' "); *Cochran v. GAF Corp.,* 542 Pa. 210, 215, 666 A.2d 245, 248 (1995) ("[w]here the issue involves a factual determination regarding what constitutes a reasonable time for the plaintiff to discover his

injury and its cause, the issue is usually for the jury"). Cf. *Hayward,* 530 Pa. at 325, 608 A.2d at 1043 (when considering the discovery rule, "only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law"). On the other hand, as seen *supra,* procedural circumstances such as these generally allow a court to consider a defendant's statute of limitations in the context of the preliminary objections, and factual disputes raised by preliminary objections, such as the discovery issues, generally are to be resolved through discovery and a decision of the court.[22]

The court believes that the goal of evaluating discovery factual disputes at trial outweighs any potential urgency to resolve State Farm's statute of limitations defense on its merits. Deciding the factual issues raised by the plaintiff's discovery rule argument could effectively eviscerate the plaintiff's right to a jury trial, potentially in violation of the Pennsylvania Constitution. See Pa. Const. Article 1, Section 6 (enshrining the right to trial by jury). Only if the facts presented in the complaint are so inadequate and insufficient that the application of the discovery rule would be unreasonable as a matter of law may the objections asserting statute of limitations be sustained.[23]

---

22. The potential for conflict has been noted by the Pennsylvania Superior Court. See *Tohan v. Owens-Corning Fiberglas Corp.,* 696 A.2d 1195, 1200 n.4 (Pa. Super. 1997) ("[a]lthough the expiration of the statute of limitations is usually a question of law, the point at which the complaining party should reasonably be aware of his injury is generally a question of fact to be determined by the jury").

23. In other contexts, Pennsylvania courts have taken similar action. Cf. *DeMary v. Latrobe Printing and Pub. Co.,* 762 A.2d 758, 762

An evaluation of the plaintiff's allegations establishes that they are unreasonable and that the question of discovery may be addressed now. According to the complaint, State Farm never established a procedure by which a policyholder could be reimbursed or instituted a form by which a policyholder could be reimbursed. Complaint at ¶¶25-26. It is also alleged that State Farm trains its agents "not to inform policyholders that they are entitled to reimbursements for lost earnings and expenses under the compensation provision." *Id.* at ¶27. In addition, the plaintiff asserts that State Farm was aware of policyholders' loss of wages, allowing them a right to compensation, but deliberately chose not to reimburse them. *Id.* at ¶30. These actions supposedly make up part of State Farm's "fraudulent, intentional and active concealment" of wrongdoing. *Id.* at ¶21.

Even viewing the plaintiff's assertions in the best light possible, the court cannot say that this argument is reasonable in any way. As best as the court can determine, the plaintiff had a copy of the policy and was free to

---

(Pa. Super. 2000) (while the court could properly consider the defendant's affirmative defense on preliminary objections due to the failure to file preliminary objections thereto, it was compelled to review the averments in the complaint solely for legal sufficiency of the claims asserted and to accept all averments of fact as true); *McNeill v. City of Philadelphia,* 104 Pa. Commw. 494, 500-501, 522 A.2d 174, 177-78 (1987) (refraining from resolving affirmative defense of governmental immunity raised in preliminary objections to which the plaintiff did not object); *Vitteck v. Washington Broadcasting Co.,* 256 Pa. Super. 427, 434, 389 A.2d 1197, 1201 (1978) (affirmative defense whose resolution required "an additional factual and legal determination which cannot be resolved by simply examining the . . . pleadings" could not be addressed in preliminary objections).

review it at his leisure. There is no indication that State Farm concealed any part of the policy or that the plaintiff exercised reasonable diligence by simply examining the policy. This supports the conclusion that the plaintiff has not satisfied his burden of proving that he was reasonably unaware of his right to compensation, and the application of the discovery rule would be unreasonable as a matter of law.[24] Cf. *Kilmore v. Erie Ins. Co.*, 407 Pa. Super. 245, 252, 595 A.2d 623, 626 (1991) ("[t]he basic contractual nature of insurance coverage . . . requires fair dealing and good faith on the part of the insurer, not hand holding and substituted judgment"). Thus, the plaintiff cannot proceed on his contract-related claims.[25]

---

24. It is worth noting the wisdom set forth in Judge D. Donald Jamieson's concurring opinion in *Webb Manufacturing Co. v. Sinoff*, 449 Pa. Super. 534, 674 A.2d 723 (1996):

"I write separately only to emphasize the point addressed in footnote one of Judge Hudock's opinion, to wit: had the parties and the trial court adhered to Rules 1028 and 1030 of the Pennsylvania Rules of Civil Procedure, a great deal of time and energy would have been conserved. Moreover, the extended analysis utilized by Judge Hudock, which of necessity examines case law dependent upon the resolution of factual questions, amply illustrates the wisdom of requiring affirmative defenses to be pled as new matter; for affirmative defenses generally require a trial court to resolve factual disputes. On the other hand, in filing a demurrer the moving parties agree to accept the factual statements as pleaded." 449 Pa. Super. at 544, 674 A.2d at 728.

25. The demise of the plaintiff's contract-related claims does not require the dismissal of his bad faith claim. See *March v. Paradise Mut. Ins. Co.*, 435 Pa. Super. 597, 601, 646 A.2d 1254, 1256 (1994) (noting that section 8371 "does not indicate that success on the bad faith claim is reliant upon the success of the contract claim").

## II. *Although Four Items the Plaintiff Requests As Relief Are Improper and Must Be Stricken, the Remainder of the Complaint Is Legally Sufficient*

For the purposes of reviewing preliminary objections in the form of a demurrer, "all well-pleaded material, factual averments and all inferences fairly deducible therefrom" are presumed to be true. *Tucker v. Philadelphia Daily News,* 757 A.2d 938, 942 (Pa. Super. 2000). When presented with preliminary objections whose end result would be the dismissal of a cause of action, a court should sustain the objections only where "it is clear and free from doubt from all the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish [its] right to relief." *Bourke v. Kazaras,* 746 A.2d 642, 643 (Pa. Super. 2000). Furthermore,

"[I]t is essential that the face of the complaint indicate that its claims may not be sustained and that the law will not permit recovery. If there is any doubt, it should be resolved by the overruling of the demurrer. . . . Put simply, the question presented by demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." *Bailey v. Storlazzi,* 729 A.2d 1206, 1211 (Pa. Super. 1999). (citations omitted)

### A. The Plaintiff's Allegations Concerning Violations of the Unfair Insurance Practices Act and the Unfair Claims Settlement Practices Act Are Proper

State Farm argues that the plaintiff's allegations of violations of the Unfair Insurance Practices Act[26] and

---

26. 40 Pa.C.S. §§1171.1—1171.15.

the Unfair Claims Settlement Practices Act[27] are improper because neither the UIPA nor the UCSPA allow private causes of action. The mention of these Acts in the complaint, however, are illustrations of how State Farm's conduct constituted bad faith, not separate claims against State Farm, and are thus permissible. See *O'Donnell ex rel. Mitro v. Allstate Ins. Co.,* 734 A.2d 901, 906 (Pa. Super. 1999) ("conduct which constitutes a violation of the UIPA may also be considered when determining whether an insurer acted in bad faith under the statute"). See also, *Parasco v. Pacific Indem. Co.,* 920 F. Supp. 647, 655 & 655 n.5 (E.D. Pa. 1996) (stating that the "UIPA serves as a reference from which a court may determine whether an insurer has acted in bad faith in a given case" and that a "court may consider UIPA bad faith provisions in determining whether an insurer has violated" Pennsylvania's bad faith statute).

## B. The Plaintiff's Requests for Restitution Damages, an Order Referring This Matter to State Agencies and Other "Just, Equitable and Proper Relief" Are Improper

State Farm also challenges the plaintiff's requests for restitution damages, injunctive relief, an order referring this matter to state government agencies and other "just, equitable and proper relief." Pennsylvania courts have stricken requests for relief when the request is unsupported by facts set forth in the complaint. See *e.g., Hudock v. Donegal Mut. Ins. Co.,* 438 Pa. 272, 277 n.2, 264 A.2d 668, 671 n.2 (1970) (striking a prayer for damages "not

---

27. 31 Pa. Code §§146.1—146.10.

legally recoverable in the cause of action" as "irrelevant to that cause of action"); *McKeeman v. CoreStates Bank N.A.,* 751 A.2d 655, 661 (Pa. Super. 2000) (striking request for punitive damages where the complaint did not allege conduct or claim allowing award of punitive damages). Here, the plaintiff's request for restitution damages, injunctive relief, a referring order and unspecified "other" relief are not supported by the complaint's allegations, requiring that they be stricken.

If a plaintiff is successful in its bad faith claim, a court may award interest on the amount of the claim, award punitive damages or assess court costs and attorney fees against the insurer. Section 8371. Because the plaintiff's bad faith action is the only one to survive the objections, the plaintiff is limited to these three types of relief.

The plaintiff states that a claimant may be entitled to restitution damages when he or she successfully pursues a claim for unjust enrichment. See *Diesel v. Caputo,* 244 Pa. Super. 195, 204, 366 A.2d 1259, 1264 (1976) ("restitution as a form of relief in assumpsit is in the nature of disgorging the amount of *unjust enrichment,* if any, to the defendant"). (emphasis in original) Because the plaintiff's unjust enrichment claim is time-barred, however, his request for restitution is improper.

The plaintiff's request for an injunction requiring State Farm to discontinue its policy of nonreimbursement and enjoining State Farm from conducting itself in a way inconsistent with the court's declarations also finds no support in the complaint. A court may grant an injunction only "where the rights and equity of the plaintiff are clear and free from doubt and the harm sought to be rem-

edied is great and irreparable." *Carringer v. Taylor,* 402 Pa. Super. 197, 204, 586 A.2d 928, 931 (1990). Irreparable harm is harm that "cannot adequately be compensated by money damages." *Sovereign Bank v. Harper,* 449 Pa. Super. 578, 590, 674 A.2d 1085, 1091 (1996) (citing *New Castle Orthopedic Associates v. Burns,* 481 Pa. 460, 463-64, 392 A.2d 1383, 1385 (1978)). It is unclear from the complaint what irreparable harm, if any, will befall the plaintiff if an injunction is not awarded. Accordingly, the request for injunctive relief must be stricken.

Similarly, the plaintiff's request that this matter be referred "to the Pennsylvania insurance commissioner and any other appropriate state authorities that regulate the conduct of the insurance industry" is improper. There is no basis for referring a matter to a state agency in section 8371,[28] and the plaintiff has failed to cite any case or statute under which its claims would justify this type of relief. This requires that the court strike the request for referral.

While the plaintiff's request for "such other and further relief as to the court appears just, equitable and proper" may be supported by the complaint, this request

---

28. If a court finds that an insurer has acted in bad faith, it is limited to awarding the following:

"(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3 percent.

"(2) Award punitive damages against the insurer.

"(3) Assess court costs and attorney fees against the insurer." 42 Pa.C.S. §8371.

does not comport with Pennsylvania's specificity requirements. Pennsylvania trial courts routinely rely on *Connor v. Allegheny General Hospital,* 501 Pa. 306, 461 A.2d 600 (1983), to strike portions of complaints that are so general that they could permit a plaintiff to supplement the complaint at a later point in time.[29] While the liberality with which Pennsylvania allows the amendment of pleadings minimizes the effect of removing a general

---

29. See *e.g., Clarkson v. Geisinger Medical Center,* 46 D.&C.4th 431, 433 (Montour Cty. 2000) ("[a]s a result of *Connor,* defendants are properly concerned about unidentified allegations of negligence arising late in the litigation process flowing out of a general allegation of negligence raised early in the process"); *Mitchell v. Remsky,* 39 D.&C.4th 122, 125 (Lacka. Cty. 1998) (general allegations of negligent conduct "represent[] an . . . attempt by the plaintiff to preserve all unpleaded theories of liability against the moving defendants"); *Flurer v. Pocono Medical Center,* 15 D.&C.4th 645, 671 (Monroe Cty. 1992) ("Pennsylvania courts view this vague and all-inclusive language with disfavor"); *Hamilton v. American Cas. Co.,* 24 Phila. 354, 356 (1992) ("[t]he language in plaintiff's complaint which 'reserves the right to include additional claims for himself or his attorney' does not satisfy the pleading requirements under Rule 1019(a) and is unacceptable pleading in Pennsylvania"). In at least one case, a trial court has held that a defendant's fears of future amendments that "amplify" general allegations are unfounded because language in *American States Insurance Co. v. State Auto Insurance Co.,* 721 A.2d 56 (Pa. Super. 1998), limits *Connor's* applicability. See *Fasula v. Hijazi,* 44 D.&C.4th 553, 565 (Lacka. Cty. 1999) ("according to the most recent appellate pronouncement, *Connor* simply states that a defendant may not obtain a compulsory nonsuit if the defendant does not request a more specific pleading . . . [and] does not obligate a defendant to pre-emptively object to general averments in order to safeguard against untimely [pleadings]"). However, no other court has read *American States Insurance Co.* in this way, and *Connor* continues to serve as a basis for striking broad "catchall" allegations and requests for relief, such as the one set forth in the complaint.

allegation or request,[30] State Farm is nonetheless entitled to have the general request for unspecified "other" relief stricken.

### III. *Because the Allegedly Scandalous and Impertinent Allegations in the Complaint Will Prejudice State Farm, They Must Be Stricken*

Under Pa.R.C.P. 1028(a)(2), a party may object to a pleading's "inclusion of scandalous or impertinent matter." "Scandalous or impertinent matter" is defined as "allegations . . . immaterial and inappropriate to the proof of the cause of action." *Common Cause/Pennsylvania v. Commonwealth,* 710 A.2d 108, 115 (Pa. Commw. 1998) (citing *D.E.R. v. Peggs Run Coal Co.,* 55 Pa. Commw. 312, 423 A.2d 765 (1980)). Pennsylvania courts have been restrained in striking scandalous and impertinent pleadings, however, and have noted that "the right of a court to strike impertinent matter should be sparingly exercised and only when a party can affirmatively show prejudice." *D.E.R. v. Hartford Accident and Indem. Co.,* 40 Pa. Commw. 133, 138, 396 A.2d 885, 888 (1979).

In the instant matter, State Farm seeks to have footnote one in paragraph 24 of the complaint stricken. This footnote refers to a prior breach of contract and consumer fraud case brought against State Farm in which the plain-

---

30. A court may deny leave to amend pleadings only when prejudice to the other party would result or when the amendment itself would violate a positive rule of law. *Noll by Noll v. Harrisburg Area YMCA,* 537 Pa. 274, 280, 643 A.2d 81, 84 (1994); *Somerset Community Hospital v. Allan B. Mitchell & Associates Inc.,* 454 Pa. Super. 188, 199, 685 A.2d 141, 146 (1996).

tiffs allegedly were awarded $1.18 billion. While the court fails to see the relevance of this prior case, State Farm has not established or even alleged that its inclusion in the complaint causes it prejudice. Nonetheless, this footnote is so improper and inappropriate that the court has no difficulty inferring prejudice to State Farm. Thus, the request that this footnote be stricken is granted.

## CONCLUSION

Because State Farm's statute of limitations defense raises factual questions, its substance cannot be addressed at present. Four of the plaintiff's requests for relief are unsupported by the complaint's allegations, and footnote one in paragraph 24 of the complaint is stricken.

## ORDER

And now, December 6, 2001, upon consideration of the preliminary objections of defendant State Farm Mutual Automobile Insurance Co. to plaintiff Louis Trujillo's amended complaint and the plaintiff's response thereto and in accordance with the memorandum opinion being filed contemporaneously with this order, it is hereby ordered and decreed as follows:

(1) The preliminary objections to Count I—declaratory judgment, Count II—breach of contract, Count III—breach of contractual duty of good faith and fair dealing and Count V—unjust enrichment are sustained and Counts I, II, III and V are stricken;

(2) The preliminary objections to the plaintiff's request for relief found in paragraphs E, F, H and I of the com-

plaint are sustained, and paragraphs E, F, H and I are stricken;

(3) Footnote one in paragraph 24 of the complaint is stricken;

(4) The remaining preliminary objections are over-ruled; and

(5) The defendant is directed to file an answer to the amended complaint within 20 days of this order.